**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 42821**

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF PARENTAL RIGHTS OF JOHN DOE (2015-01). | ) ) ) | |
| ------------------------------------------------------- | ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE on behalf of JANE DOE, a child under the age of eighteen (18) years, | ) ) ) ) | |
| | ) | Boise, May 2015 Term |
|     Petitioner-Respondent on Appeal, | ) | |
| | ) | 2015 Opinion No. 61 |
| v. | ) | |
| | ) | Filed:  June 24, 2015 |
| JOHN DOE (2015-01), | ) | |
| | ) | Stephen W. Kenyon |
|     Respondent-Appellant on Appeal, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JANE DOE, | ) | |
| | ) | |
|     Respondent. | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County.  Hon. Angela Lynne Krogh, Magistrate Judge.

Magistrate order terminating parental rights, <u>affirmed.</u>

Kenneth F. Stringfield, Caldwell, for appellant.

Brent King, Deputy Attorney General, Boise, for respondent.

_____

SUBMITTED ON THE BRIEFS

BURDICK, Chief Justice

This is an expedited appeal from the magistrate's order terminating John Doe's parental rights as to his daughter, L.E. We affirm.

## I. BACKGROUND

The factual findings were well documented in the magistrate's December 16, 2014, findings, conclusions, and order of termination. John Doe has a long history of drug use,

beginning at around age 11, and a somewhat troubled family history. He started using methamphetamine in his early teens and has continued using methamphetamine consistently for the past twenty-plus years. When Doe was 11 or 12, his parents placed him in an inpatient drug treatment facility, Aspen Crest, in Pocatello. In his later teens, he went to the Port of Hope treatment facility in Twin Falls as part of a juvenile proceeding. When Port of Hope wanted to send Doe to a treatment facility in Salt Lake City, he ran away. When Doe was approximately 27 years old, he moved to California and, around 2005, served a year in prison for making terrorist threats. He participated in more drug treatment while in prison. After successfully completing his parole, he moved back to Idaho.

Doe and L.E.'s mother had been together about a year and a half when L.E. was born in December 2011. The following month, Doe was arrested for possession of methamphetamine, spent several months in jail before being released on bond, and was later convicted. Doe was also charged with several misdemeanor offenses arising from the same incident; under a plea agreement, he was convicted of two misdemeanors—resisting and obstructing an officer and malicious injury to property—and the others were dismissed. Doe then entered his third drug treatment program, as he was sentenced to a CAPP Rider, a three-month program that includes drug treatment. He completed that program successfully.

He was serving the Rider when L.E. came into the care of the Idaho Department of Health and Welfare ("IDHW") on August 27, 2012, through an emergency removal. The State filed a petition under the Child Protective Act on August 28, 2012. L.E.'s mother had left her with family members, then disappeared. L.E. was placed in temporary shelter care until a hearing on September 20, 2012, at which the parties stipulated that L.E. lacked a stable home environment and stipulated to placement in IDHW's custody. The magistrate entered a Decree of Protective Custody on October 9, 2012. On November 25, 2012, following a hearing, the magistrate entered a case plan, notifying the parents that failure to comply with the plan could result in termination of parental rights. The case plan identified Doe's tasks: obtain a substance abuse evaluation, obtain drug testing, resolve his criminal law issues, take a parenting class, obtain stable housing, obtain stable income, maintain contact with the Department, and obtain a custody order for L.E. IDHW set forth the main goal of the case plan: "We wanted to see a prolonged sobriety as demonstrated by drug testing."

When he was released on September 19, 2012, Doe entered his fourth drug treatment program, for relapse prevention and outpatient treatment. This program consisted of two 2–3 hour counseling sessions per week. Doe successfully completed the program and graduated in March of 2013. Doe had completed parenting classes in his Rider program and was consistent with his visitation. He obtained employment and suitable housing. He completed the custody paperwork. Beginning in December, L.E. had begun having extended home visits with Doe, which continued through the spring.

Then, in April 2013, Doe had a positive hair follicle test but negative urinalysis (UA) tests. In May and June of 2013 Doe had a number of failed UA tests—some for failure to report, others for failure to produce. Doe was using a babysitter not approved by IDHW. Doe was also by then living with a woman he had known since childhood, and in June, following an argument with her, he sent her a text threatening to overdose on pills and "to take L.E. with him." She reported this to Doe's father and stepmother, who immediately removed L.E. and kept her with them for a week. On June 26, 2013, Doe admitted to a probation/parole violation in that he had relapsed one month previously and had been using methamphetamine about twice a week since. The home visits with L.E. were terminated on July 11, 2013, and L.E. was ultimately placed with Doe's father and stepmother. In the meantime, shortly after the home visits were terminated, a hair follicle test on L.E. came back positive for methamphetamine. A subsequent test was negative. The court held a permanency hearing on August 15, 2013, approving a permanency plan with a goal of reunification and a concurrent permanency goal of termination of parental rights and adoption.

Doe began his fifth drug treatment program in September 2013. In October Doe admitted he had been using methamphetamine nearly every day for the past month and a half. He had, at some point, lost his job. In December 2013, Doe was arrested for misdemeanor driving without privileges. The next month, January of 2014, he was arrested for misdemeanors of possession of drug paraphernalia, obstructing and delaying an officer, and frequenting a place where controlled substances are used. Doe had tested positive for methamphetamine in 10 UA tests between February 2013 and January 2014. In that time, he had also failed to report for 16 UAs and failed to produce at 9 UAs. In January 2014, Doe was terminated from his treatment program for nonattendance. Around this time, he moved in with friends because he could not pay his rent. In March 2014, Doe was arrested for driving without privileges, and on May 16, 2014, he was

arrested for felony possession of methamphetamine, felony possession of stolen property, misdemeanor possession of paraphernalia, and misdemeanor driving without a license. He remained in custody until August 2014, when the magistrate released Doe on the condition that he enter and successfully complete the "Therapy in Motion" treatment at Lava Hot Springs.

Doe completed the residential portion of that program in November 2014. He was then sentenced for felony possession of a controlled substance, for which he received a suspended sentence and three-year probation, including a requirement that he complete the year-long Therapy in Motion outpatient treatment. He continues in the outpatient treatment and has obtained a construction job. He has a residence in McCammon, where he lives with the woman he had known since childhood, an admitted methamphetamine addict, to whom he is now engaged. At the trial for termination, Doe admitted he was not ready to care for L.E. yet because he needs a stronger foundation in his sobriety before he becomes a full-time parent.

In April 2014, the magistrate had changed the permanency plan to a goal of termination of parental rights and adoption, approving the plan in August 2014. IDHW filed a petition to terminate Doe's parental rights on June 6, 2014. Trial on the petition was held in November 2014. On December 16, 2014, the magistrate ordered Doe's parental rights terminated. The magistrate outlined three findings supporting the termination of rights decision: 1) Doe had neglected the child, as defined by Idaho Code section 16-1602(28), in that he had failed to or been unable to provide L.E. with parental care necessary to her well-being; 2) Doe had neglected the child, as defined by Idaho Code section 16-2002(3)(b), in that reunification did not occur within the timeline required, the child had been in state custody for more than 27 months, and Doe had failed to comply with the case plan tasks; 3) termination of parental rights was in L.E.'s best interest. The magistrate entered a Decree Terminating Parental Rights on December 23, 2014. Doe timely appealed under I.R.C.P. 83(a) and I.A.R. 11.1 and 12.2.

## II. ISSUES ON APPEAL

Doe states two issues on appeal: 1) Whether the trial court committed clear error in finding that there was neglect when Doe's absence was not willful, he substantially complied with his case plan, and IDHW's unreasonable efforts impeded his progress; and 2) Whether the trial court committed clear error in finding that "there was no basis upon which to say when reunification might occur" where Doe has proved his sobriety and reunification is possible.

4

## III. ANALYSIS

This Court reviews termination of parental rights cases as follows:

> Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive[,] and to judge the character of the parties.

*Idaho Dep't of Health & Welfare v. Doe (2012-06)*, 154 Idaho 175, 178, 296 P.3d 381, 384 (2013) (quoting *Idaho Dep't of Health & Welfare v. Doe (2011–16)*, 152 Idaho 263, 267, 270 P.3d 1048, 1052 (2012)).

Idaho Code section 16-2005(1) authorizes courts to grant an order terminating the parent–child relationship upon a finding that termination is in the best interest of the child, along with a finding that one or more of five enumerated conditions exists, including neglect. "Neglect," for purposes of terminating parental rights in a Child Protective Act case, means 1) any act or omission constituting neglect as outlined in Idaho Code section 16-1602(28) or 2) failure to comply with the case plan when IDHW has had custody of the child for 15 of the past 22 months and reunification has not been accomplished by the last day of the fifteenth month of state custody. I.C. § 16-2002(3). The magistrate found that Doe neglected L.E. under both definitions: first, as defined in 16-1602(28)(a) and (b), that he failed to or was unable to provide the child with the parental care necessary to her well-being; and second, that he failed to comply with the case plan and to reunify by the last day of the fifteenth month of state custody.

A.    **Substantial and competent evidence supports the magistrate's finding that there was a failure or inability to provide proper parental care.**

Doe argues that the trial court committed clear error in finding neglect by failing to or being unable to provide proper parental care, first because Doe's absence from the child was "not willful." Willfulness, though, is not necessary to a finding of neglect, and therefore its absence is not a defense to neglect. *In re Doe (2014–17)*, 157 Idaho 694, 700, 339 P.3d 755, 761 (2014)

5

("[W]illful neglect and willful non-compliance with the case plan is not the standard."). Therefore, it was not error for the magistrate to find neglect without finding willfulness.

Doe also argues that it was error for the trial court to rely on Doe's absences due to incarceration and drug treatment to conclude he did not provide proper care because, Doe asserts, this would mean everyone who leaves a child in the care of another has neglected the child. First, as we have stated before, evidence of incarceration is competent evidence of neglect. "[A] parent in prison for a substantial part of his children's lives clearly cannot provide any amount of 'parental care and control, or subsistence, medical or other care or control necessary for [their] well-being.'" *Idaho Dep't of Health & Welfare v. Doe (2011–12)*, 151 Idaho 846, 852, 264 P.3d 953, 959 (2011) (quoting I.C. § 16-1602(25)(a)[1]). "Further, an incarcerated parent is certainly 'unable to discharge [his] responsibilities to and for' his children and, he is leaving his children without 'the parental care necessary for [their] health, safety or well-being.'" *Id.* Additionally, a parent's "inability to comply with the law is contrary to providing for the health, morals and well-being" of a child. *In re Doe*, 143 Idaho 343, 347, 144 P.3d 597, 601 (2006). Therefore, it was not error for the court to consider Doe's incarceration in determining he had neglected the child.

Second, the magistrate did not rely entirely on absences in determining Doe had neglected L.E.; there were many specific findings, well documented in the court's findings and conclusions, that supported the court's ruling that Doe had failed to provide proper parental care. In addition to numerous criminal convictions and incarcerations, Doe has a long history of addiction, a long history of failed treatment for the addiction, has not maintained stable employment or housing, has only spent approximately 6 or 7 months in the company of and caring for this now-3-year-old child, and admits that he is not ready even now to care for the child. Substantial and competent evidence supports the magistrate's finding that Doe has neglected his child by failing to provide proper parental care.

**B.** **Substantial and competent evidence supports the magistrate's finding that termination is in the child's best interest and that Doe failed to comply with the case plan.**

The magistrate also found that termination was appropriate because Doe failed to comply with the case plan, IDHW had custody of the child for 15 of the 22 months preceding the court's

---

[1] This statute section is now renumbered as I.C. § 16-1602(28).

order, reunification had not been accomplished by the last day of the fifteenth month of the child's custody with IDHW, and termination was in the child's best interest. Doe does not dispute that the state had custody of L.E. for 27 months or that reunification did not occur within the required time frame. Doe argues that he "substantially complied" with the case plan and that his efforts to do so were "impeded" by IDHW's "unreasonable efforts" and thus the magistrate erred in finding he failed to comply. Doe fails to cite any legal authority supporting these arguments. When issues presented on appeal are not supported by propositions of law, citation to legal authority, or argument they will not be considered by this Court. *Huff v. Singleton*, 143 Idaho 498, 500, 148 P.3d 1244, 1246 (2006). "Even in an appeal from the termination of parental rights, 'we will not consider an issue which is not supported by cogent argument and authority.'" *In re Doe (2013-15)*, 156 Idaho 103, 109, 320 P.3d 1262, 1268 (2014) (quoting *Idaho Dep't of Health & Welfare v. Doe (2011-03),* 151 Idaho 498, 503 n. 1, 260 P.3d 1169, 1174 n. 1 (2011)).

Doe's remaining two arguments—that the trial court erred in finding there was no basis to say when Doe might be ready for reunification, and that the court erred in concluding termination was in the child's best interest—simply seek to have this Court reweigh the evidence and reach a different conclusion than the trial court. The trial court has broad discretion in deciding whether to terminate parental rights, and this Court does not reweigh the evidence. *Id.* at 108, 320 P.3d at 1267. "Findings are competent, so long as they are supported by substantial albeit possibly conflicting, evidence." *Roberts v. Roberts*, 138 Idaho 401, 405, 64 P.3d 327, 331 (2003). As we explained in *In re Doe (2013-15)*, where a mother's parental rights had been terminated in part because the trial court found aggravating circumstances, "[the mother's] acknowledgement that the State presented evidence of aggravated circumstances, which she disputed, reflects the existence of substantial, competent evidence to support the finding of aggravated circumstances." 156 Idaho at 108–09, 320 P.3d at 1267–68. Here, as in *In re Doe (2013-15)*, Doe admits there was testimony before the magistrate from IDHW "that it is Doe's continued criminal activities, addiction, and instability that are not in L.E.'s best interests, especially when compared to the stable placement that she is currently in." He also admits that the guardian ad litem for L.E. testified "that termination would be in L.E.'s best interests because she needs permanency." Ample evidence supported the magistrate's ruling that termination is in the child's best interest.

## IV. CONCLUSION

We affirm the magistrate's order terminating Doe's parental rights. Costs to respondent.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**