# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45100

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, August 2018 Term |
| | ) | |
| v. | ) | Filed: November 28, 2018 |
| | ) | |
| STEVEN MICHAEL MOORE, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County, Hon. Barbara A. Buchanan, District Judge.

The judgment of the district court is affirmed.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Kimberly A. Coster argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. John McKinney argued.

_____

HORTON, Justice.

Steven Michael Moore appeals the district court's decision denying his motion to suppress his identification by an eyewitness. The district court found that law enforcement had engaged in a suggestive identification procedure but concluded that the identification was nonetheless reliable under the five-factor reliability test first articulated by the United States Supreme Court in *Neil v. Biggers*, 409 U.S. 188 (1972). Moore argues that the district court should have suppressed the identification because the district court's findings regarding several of the reliability factors were not supported by substantial and competent evidence. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The eyewitness whose identification is at issue is a twelve-year-old boy, B.K. On May 6, 2016, B.K. was riding an all-terrain vehicle (ATV) when he realized that he was being followed by a pickup. After B.K. pulled into his driveway, the pickup followed him into the driveway and

1

intentionally rammed the ATV while B.K. was stilled seated on it. Although he did not exit the pickup, the male driver threatened B.K., saying "If I see any f***bags like you driving fast on my road again, I will shoot and kill you with a bullet." The pickup then left. The Bonner County Sheriff's Office was notified and Patrol Deputy Kempton responded to the scene.

B.K. described the driver of the pickup as "between 50 and 70 years old, a full head of gray hair, a thick gray and white mustache, medium build, dirty teeth," and smelling of cigarette smoke. B.K. described the vehicle as a "dark blue older truck with a matching canopy." B.K. told police that he would be able to identify the perpetrator and his truck if he saw them again.

After some investigation the following day, Kempton suspected that Moore might have been involved in the incident. Using the computer in her patrol car, she obtained Moore's driver's license photograph. She forwarded the color photograph to Sergeant Cotter who was closer to B.K.'s home. Cotter went to B.K.'s home, where B.K. and his stepfather were standing in the driveway. Cotter told them that he had a picture for B.K. to look at and showed B.K. Moore's driver's license photograph on his in-car computer. Within seconds, B.K. identified Moore as the driver from the incident the preceding day. When Cotter asked B.K. if he was sure of the identification, B.K. responded that he was positive. Moore was then arrested.

B.K. left town to visit his father for the summer, returning in late July. On July 29, 2016, Kempton went to B.K.'s home and showed B.K. a "six-pack," i.e., a photographic array consisting of six black and white booking photographs, two of which (including Moore's) bore, in small letters along the bottom of the photograph, the words "Bonner County Sheriff's Office" and a booking number. Before showing B.K. the photographic array, Kempton told B.K. that the line-up had six people matching his description of the pickup driver, that the driver may or may not be in the line-up, and that if B.K. saw somebody that he thought was the driver, to initial the photograph. B.K. chose the photograph of Steven Moore within seconds, and he placed his initials on the photograph.

Moore moved to suppress B.K.'s identification of him as the driver of the vehicle. At the suppression hearing, based upon the prosecutor's stipulation, the district court found that Cotter's use of the single photograph was impermissibly suggestive. The district court then evaluated the reliability of B.K.'s identification in light of this Court's decisions in *State v. Hoisington*, 104 Idaho 153, 657 P.2d 1362 (1983), and *State v. Almaraz*, 154 Idaho 584, 301 P.3d 242 (2013).

The district court concluded that the reliability of B.K.'s identification outweighed the suggestive aspects of the identification procedure.

Moore entered an *Alford*[1] plea to attempted aggravated assault in which he reserved the right to appeal the district court's order denying his motion to suppress. The district court sentenced Moore to two years' imprisonment, with one year fixed, and suspended the sentence, placing Moore on probation for two years. Moore timely appealed from the judgment of conviction.

## II. STANDARD OF REVIEW

"The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, the Court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found." *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004). "Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Doe Children*, 163 Idaho 536, 538, 415 P.3d 945, 947 (2018) (quoting *Idaho Dep't of Health & Welfare v. Doe (2015-01)*, 158 Idaho 764, 767, 351 P.3d 1222, 1225 (2015)).

## III. ANALYSIS

The issue presented in this appeal is whether the district court correctly denied Moore's motion to suppress after finding that the reliability of B.K.'s identification outweighed the suggestive nature of the identification procedure used by the sheriff's department.

> To determine whether evidence of an out-of-court identification violates due process, this Court applies a two-step test. *See State v. Hoisington*, 104 Idaho 153, 162, 657 P.2d 17, 26 (1983). First, the defendant must establish that the identification procedure was overly suggestive. *United States v. Wade*, 388 U.S. 218, 240 n. 31 (1967); *Hoisington*, 104 Idaho at 162, 657 P.2d at 26. Second, if the defendant meets that burden, courts consider whether the identification was nonetheless reliable under the totality of the circumstances. *Id.* This second step entails considering the witness's opportunity to view the perpetrator, his degree of attention, the accuracy of his description, his level of certainty, and the time between the crime and pretrial confrontation, and then weighing those factors against the "corrupting effect of the suggestive identification." *Manson v. Brathwaite*, 432 U.S. 98, 108 (1977); *Hoisington*, 104 Idaho at 162, 657 P.2d at 26. Thus, greater indicia of reliability may be necessary the more egregious the suggestive procedures.

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

*State v. Almaraz*, 154 Idaho 584, 593, 301 P.3d 242, 251 (2013). The five-factor reliability analysis of *Manson* was first articulated by the United States Supreme Court in *Neil v. Biggers*, 409 U.S. at 199–200. *Manson*, 432 U.S. at 114. In *Almaraz*, we explained that the analysis of the five reliability factors is further informed by "estimator variables," observing that the following tend to diminish the reliability of a witness' identification:

> (1) stress; (2) the use of a visible weapon during a crime; (3) the shorter the duration of a criminal event; (4) the greater the distance and the poorer the lighting conditions; (5) increased levels of intoxication; (6) the use of disguises during the crime and changes in facial features between the time of initial observation and a subsequent identification; (7) the greater the period of time between observation and identification to law enforcement; (8) race-bias; and (9) feedback from co-witnesses confirming the identification of a perpetrator.

*Almaraz*, 154 Idaho at 594, 301 P.3d at 252. In *Almaraz*, we made clear that these estimator variables are to be considered within the scope of the existing test to weigh the five reliability factors against the "corrupting effect of the suggestive identification." *Id.* at 593, 301 P.3d at 251 (quoting *Manson*, 432 U.S. at 108).

The district court correctly recognized the problematic nature of the use of a single photograph for B.K.'s initial identification of Moore. *Hoisington*, 104 Idaho at 162, 657 P.3d at 26 ("In particular, single subject showups are inherently suspect and generally not condoned."). The State concedes that the district court correctly held that the use of the single photograph was overly suggestive. Therefore, we will only address the district court's decision that the reliability of B.K.'s identification outweighed the impact of the suggestive identification procedure.

### A. The witness' opportunity to view the perpetrator

The first factor used to evaluate whether an identification made after an overly suggestive procedure is nevertheless reliable is the witness' opportunity to view the perpetrator. *Almaraz,* 154 Idaho at 595, 301 P.3d at 253. Several of the estimator variables identified in *Almaraz* assist in this determination: "under the first factor courts may consider the lighting at the time the crime was committed, whether the perpetrator was wearing a disguise, and the length of time taken to commit the crime, among other variables." *Id.*

Finding that this factor supported the reliability of B.K.'s identification, the district court wrote:

[T]his Court finds that [B.K.] had an opportunity to view [the perpetrator]. While still seated on the ATV, [B.K.] could turn around and view the driver's face through the windshield of the truck. Further, counsel stipulated that it was "dark" at the time of the incident. But remember, [B.K.] had driven the ATV 50 yards up the driveway to near his house, and his mother "observed [B.K.] pull into the driveway and the truck hit him. She ran out and the male left in the truck." So, although it was "dark" and no testimony was elicited as to whether the exterior lights from the [witness'] home or from the ATV or the truck illuminated the scene, due to the detail of the description given by [B.K.], this Court finds that the lighting conditions—whether natural or artificial—were sufficient to allow [B.K.] to get a clear view of the perpetrator's face at the time of the crime through the windshield of the truck.

For factual questions, this Court "will not substitute its view for that of the [trial] judge if the situation is such that reasonable minds might differ." *State v. Howard*, 135 Idaho 727, 732, 24 P.3d 44, 49 (2001). The applicable standard of review requires this Court to affirm a factual finding "if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 363, 93 P.3d 685, 694 (2004). The district court's observations regarding B.K.'s opportunity to view the perpetrator—including that the lighting conditions were sufficient—were reasonable inferences drawn from the evidence presented to it. Substantial and competent evidence supported the district court's factual finding regarding B.K.'s opportunity to observe Moore.

### B. The witness' degree of attention

When examining the witness' degree of attention, several different estimator variables apply: "[u]nder the second factor courts may consider the amount of stress the witness was under, whether a weapon was present, or the witness's level of intoxication." *Almaraz*, 154 Idaho at 595, 301 P.3d at 253. The district court concluded that because there was no firearm present, there was no visible weapon that would decrease reliability of the identification. Additionally, the district court found that while:

> verbal threats made to [B.K.] during the incident may have caused him stress, the [district court] finds that such stress, if any, did not undermine his degree of attention to the perpetrator. On the contrary, any words spoken by the male driver would cause [B.K.] to focus even more attention on the driver's face.

The research that the Court embraced in *Almaraz* demonstrated that stress, along with the other estimator variables, tends to "diminish the reliability of a witness's identification . . . ." *Almaraz*, 154 Idaho at 594, 301 P.3d at 252; *see also State v. Abdullah*, 158 Idaho 386, 498, 348 P.3d 1,

5

113 (2015) (recognizing reliability where "the situation was non-threatening and non-stressful"). The district court correctly recognized that stress was an appropriate subject for its consideration. The degree of stress experienced by the witness and its corollary impact upon the reliability of the identification is a fact-specific determination for the trial court. The district court evaluated the evidence and made the factual determination that any stress that B.K. experienced did not negatively affect the reliability of his identification. Substantial and competent evidence supported this factual finding and we will not overturn it.

### C. The accuracy of the witness' prior description of the perpetrator

Under the third factor of reliability, courts determine whether the description of the perpetrator was accurate enough to indicate reliability. *Almaraz*, 154 Idaho at 596–97, 301 P.3d at 254–55. The district court found that "the description of the male driver by [B.K.], given to Deputy Kempton almost immediately following the incident, bears a striking resemblance to [Moore's] driver's license photograph."

Moore raises several challenges to this determination, specifically that: (1) Moore's hair is brown, not gray; (2) Moore does not have a full head of hair, nor is his hair curly; (3) Moore claims that he does not smoke;[2] and (4) Moore's mustache extends beyond the point of the description. Therefore, Moore argues that the only remaining features in B.K.'s description are far too general to constitute the striking similarity found by the district court. Moore also points out that B.K.'s identification was based upon a color photograph while the district court examined only a black and white copy of that photograph.

The district court's finding that Moore resembles the description is supported by substantial and competent evidence, despite the contradictions identified by Moore. *See Hull v. Giesler*, 163 Idaho 247, 409 P.3d 827, 830 (2018) ("Findings of fact that are supported by substantial and competent evidence are not clearly erroneous—even in the face of conflicting evidence in the record."). The district court explained why the differences raised by Moore were of little consequence:

> Moore's gray and white mustache appears to stop at or just below the crease of his mouth; strands of gray hairs are visible around his temples and at the top of his

---

[2] The district court observed the lack of evidence supporting this claimed discrepancy: "Lastly, the defendant asserts that [he] does not smoke. Moore did not testify at the suppression hearing." The district court then stated that it did not find "the fact that Moore does not smoke, if true, to undermine the accuracy of [B.K.'s] description."

head; he looks to be of medium build and between 50 and 70 years old. Moore does not have a full head of gray hair; however, the 12 year-old victim in this case was looking at Moore from the front, and perhaps lower, vantage point of the ATV seat, and from that angle it is difficult to ascertain where his hair line starts.

On the record before us, we must defer to the district court's factual finding that Moore's photograph resembled the subject of B.K.'s description.

However, to buttress its determination that B.K.'s prior description was accurate, the district court noted that B.K. had described the perpetrator "as driving a dark blue older truck with a matching canopy" and that Moore's vehicle matched this description. Moore disputes this finding, arguing that his vehicle is a different color and is a sport utility vehicle, not a pickup with matching canopy. Moore also argues that the district court's reliance on the accuracy of B.K.'s description of his vehicle is improper because the vehicle was not used in any manner during the identification.

We agree with Moore that it was improper for the district court to rely on circumstantial evidence to evaluate the reliability of B.K.'s identification. The question for the district court was not whether B.K. correctly identified Moore as the perpetrator. Instead, the question before the district court was whether an evaluation of the five factors showed that B.K.'s identification was sufficiently reliable as to outweigh the corrupting influence of the single-photograph identification procedure.[3] By considering the accuracy of B.K.'s description of a vehicle which was not involved in the identification, the district court erred. However, given the district court's finding that Moore resembled B.K.'s description, we agree with the district court that this factor weighs in favor of the reliability of B.K.'s identification.

### D. Level of certainty demonstrated at the identification

---

[3] This is unlike the more common situation where a suspect is arrested shortly after a crime and the reliability of a show-up or single photograph identification is at issue and the description of the suspect includes a description of clothing. In *State v. Bush*, this Court considered the defendant's clothing when determining the reliability of the identification where the clothing was used by the witness in **both** the initial description and subsequent identification. 131 Idaho 22, 28–29, 951 P.2d 1249, 1255–56 (1997). Thus, this Court used the fact that the defendant's clothing during the identification matched the clothing from the witness' prior description of the perpetrator as evidence of reliability. *Id.*; *see also Manson v. Brathwaite*, 432 U.S. 98, 115 (1977) (noting that defendant did not dispute that his clothing matched the witness' description indicated reliability of identification). The most extreme example of using clothing to evaluate the reliability of an identification may be found in *Vessell v. State*, where the Alaska Supreme Court found two eyewitnesses' identification to be reliable solely on the "detailed and accurate" descriptions of a robber's clothing, despite their inability to recognize his facial features." 624 P.2d 275, 279 (Alaska 1981), *overruled on other grounds by Young v. State*, 374 P.3d 395 (Alaska 2016).

The district court found that B.K. "demonstrated a high level of certainty in his identification of" Moore as the driver because B.K. identified Moore within seconds after Cotter showed him the photograph, B.K. told Cotter that he was "positive" that the photograph was that of the driver, and because B.K. immediately identified Moore in July 2016 when Kempton showed him the six-pack containing a different photograph of Moore. Moore argues that the district court incorrectly found that this factor supported reliability because Cotter failed to record the identification and used an overly suggestive identification procedure.

In *Almaraz*, we noted that "courts should be cautious in the amount of weight they give to a witness's degree of certainty in their identification when police have used overly suggestive procedures, particularly when confirmation feedback has been given." 154 Idaho at 595, 301 P.3d at 253. There, we held that this factor weighed against reliability where the only evidence of certainty came from police testimony and the officer had willfully failed to record the identification. *Id.* at 597, 301 P.3d at 255.

Here, there is no evidence in the record that indicates the police officers willfully decided not to record the identification procedure nor is there any indication that Cotter provided any form of confirmation feedback. We find Moore's reliance on *Almaraz* in support of his claim that this factor weighs against reliability is misplaced. Substantial competent evidence supported the district court's finding that this factor indicated reliability.

### E. Length of time between incident and identification

The district court found that the length of time between the incident and the identification indicated reliability because the identification took place only the next day. Moore does not dispute this finding. *Almaraz* recognizes that a longer "period of time between observation and identification" diminishes the reliability of a witness' identification. 154 Idaho at 594, 301 P.3d at 252. Periods of up to three days have been found to be reasonable. *Id.* at 598, 301 P.3d at 255. As only one day had passed, the district court correctly found that this factor weighs in favor of reliability.

Considering these five factors together, we agree with the district court's determination that B.K.'s identification of Moore was reliable despite the initial use of an overly suggestive identification procedure. Thus, we affirm the district court's decision denying Moore's motion to suppress.

## IV.     CONCLUSION

We affirm the judgment of the district court.


Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**