**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49322**

| | | |
|---|---|---|
| **In the Matter of:  John Doe II and John Doe III, Children Under Eighteen (18) Years of Age.** | ) ) ) | |
| **JANE DOE I and JOHN DOE I,** | ) | |
| | ) | **Filed:  March 11, 2022** |
| Petitioners-Respondents, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | **THIS IS AN UNPUBLISHED** |
| **JOHN DOE (2020-51),** | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County.  Hon. David R. Kress, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

David R. Martinez, Bannock County Public Defender; Jessalyn R. Hopkin, Deputy Public Defender, Pocatello, for appellant.

Penrod Swenson, PLLC; David K. Penrod, Pocatello, for respondent.

_____

HUSKEY, Judge

John Doe appeals from the magistrate court's judgment terminating his parental rights. Doe alleges the magistrate court erred, arguing that there was insufficient evidence to establish a statutory ground for termination and that termination is in the best interests of the children. Because substantial and competent evidence supports the magistrate court's findings, the court did not err and the judgment terminating Doe's parental rights is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe and Jane Doe (Mother) were previously married and are the biological parents of G.P. and N.P.  Around the time G.P. was born in 2008, Doe was injured while working and was prescribed pain medication for his injury.  He became addicted to the pain medication.  Doe sought

1

medical assistance for his addiction but was unsuccessful. Soon after the birth of N.P. in 2011, Doe was incarcerated for possession of methamphetamine and burglary. Shortly thereafter, Doe and Mother separated and eventually divorced. Since Doe's first incarceration after N.P.'s birth, Doe has been incarcerated thirteen times for various criminal offenses, including convictions for felony possession of methamphetamine, burglary, driving while intoxicated, and numerous probation violations.

In 2014, Mother and John Doe I (Stepfather) married. A few years later, Mother filed a petition to modify the divorce decree between her and Doe and was awarded sole physical and legal custody of the children. In 2019, Mother and Stepfather filed a petition for adoption and termination of Doe's parental rights to G.P. and N.P. The magistrate court held the termination trial in May of 2020. After the termination trial, the magistrate court found that Doe abandoned G.P. and N.P. and that termination is in the best interests of the children. The magistrate court entered a judgment terminating Doe's parental rights. Doe appealed. This Court held that the magistrate court erred by applying the wrong standard of review and that the evidence presented at the termination trial did not establish, by clear and convincing evidence, that Doe abandoned his children. Accordingly, we vacated the judgment terminating Doe's parental rights and remanded the case to the magistrate court. *Matter of Doe II*, Docket No. 48270 (Ct. App. Jan. 27, 2021) (unpublished).

On remand, Mother moved for another hearing. The magistrate court held the hearing in August of 2021. At the hearing, the parties agreed to provide additional testimony and argument concerning events that occurred after the termination trial. Doe testified that after the termination trial, he was released from incarceration, relapsed, stole two vehicles, and was currently serving a sentence for misdemeanor depriving an owner of his vehicle. The magistrate court incorporated the factual findings from the previous order and made additional, new factual findings based on the evidence from the hearing.[1] The magistrate court found that Doe abandoned and neglected G.P. and N.P. and termination is in the best interests of the children. The magistrate court entered a judgment terminating Doe's parental rights. Doe timely appeals.

---

[1] By the time the magistrate court entered its findings, Doe's parole had been revoked.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe argues the magistrate court erred by terminating his parental rights because there was not clear and convincing evidence for the magistrate court's findings of a statutory ground for termination and that termination of Doe's parental rights is in the best interests of the children. In response, Mother argues the magistrate court did not err.

### A. Substantial and Competent Evidence Supports the Magistrate Court's Finding of Neglect

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a

parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court found Doe neglected his children by failing to provide them with the proper care and control necessary for their well-being, which is a statutory ground that supports termination of Doe's parental rights to G.P. and N.P.[2] Although Doe alleges various reasons there was insufficient evidence of neglect, we are not persuaded.[3]

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian, or other custodian or their neglect or refusal to provide them. Because a parent who is in prison for a substantial part of his children's

---

[2] Although the magistrate court later discussed additional statutory grounds, including the inability to discharge parental responsibilities and incarceration, we understand the magistrate court used these as components of its neglect finding, not as independent statutory grounds, and as such, we decline to address them independently. To the extent that the magistrate court intended Doe's inability to discharge parental responsibilities and incarceration as independent statutory grounds supporting termination of Doe's parental rights, we need not address them because we affirm the order on the grounds of neglect. *See In re Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006) ("Each statutory ground is an independent basis for termination.").

[3] Additionally, Doe argues that, as part of a private termination proceeding, he did not have the same level of support (i.e. state facilitated treatment, programming, and visitation) if the proceeding had been part of a child-protection action. Doe does not assert how the absence of these state resources relates to the magistrate court's finding that Doe neglected G.P. and N.P. Accordingly, we decline to address this issue. *See Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997) (party waives an issue on appeal if either argument or authority is lacking).

lives cannot provide the parental care and control, or subsistence, medical, or other care necessary for the children's wellbeing, evidence of incarceration is competent evidence of neglect. *Idaho Dep't of Health & Welfare v. Doe*, 158 Idaho 764, 768, 351 P.3d 1222, 1226 (2015); *see also Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 846, 852, 264 P.3d 953, 959 (2011) (holding father's imprisonment alone constitutes neglect); *Idaho Dep't of Health & Welfare v. Doe*, 162 Idaho 400, 404, 397 P.3d 1159, 1163 (Ct. App. 2017) ("A parent's inability to comply with the law is contrary to providing for the health, morals, and well-being of a child."). While a court must consider both past and current efforts by a parent to maintain a parent-child relationship, *Doe*, 137 Idaho at 761-62, 53 P.3d at 344-45, it may find an incarcerated parent neglected his children even when he made efforts to provide for them within the confines of his incarceration, because willfulness is not a component of, nor a defense to, neglect. *Doe*, 158 Idaho at 768, 351 P.3d at 1226.

We have also recognized that evidence of unstable employment, insecure housing, a substance abuse problem that interferes with the ability to parent, and failure to pay child substantiate a finding of neglect. *Int. of Doe I*, 166 Idaho 173, 177-78, 457 P.3d 154, 158-59 (2020); *Doe v. Doe I* (2017-15), 162 Idaho 653, 659, 402 P.3d 1106, 1112 (2017). In determining whether neglect has occurred, a court may consider past character evidence in order to determine future behavior. *Doe*, 162 Idaho at 658-59, 402 P.3d at 1111-12.

Here, the magistrate court found that Doe neglected G.P. and N.P. because of Doe's criminal behavior, lengthy periods of incarceration, failure to abide by the terms of his probation, failure to maintain employment, failure to meet his child support obligations, and inability to discharge his parental duties for much of the last decade, which the court found likely to continue based on Doe's criminal history. Specifically, the magistrate court found that as a result of Doe's criminal choices, he spent nearly seventy-five percent of his life incarcerated since 2013, which included thirteen separate incarcerations in the last ten years. The magistrate court emphasized Doe's testimony during the termination trial in May 2020 that a future substance abuse relapse would not be good for his children and would require the court system to take action to protect them and that Doe subsequently was released from incarceration, relapsed, and was arrested for grand theft in November 2020. The magistrate court noted that although the criminal charge stemming from this particular arrest was ultimately reduced, the result was Doe's continuous incarceration from the time of the arrest. Thus, while the magistrate court acknowledged its

5

previous optimism that Doe's behavior would improve after the termination trial, after the hearing in August 2021, the court found this belief was mistaken because:

> between the time [Doe's] appeal commenced and some time before it was decided, he was already back on drugs, committed new crimes and had his parole revoked. Since it is impossible for me to know the future, I can only say it appears highly unlikely that [Doe] will be free from the shackles of the law or the shackles of his drug addictions and bad choices.

Additionally, the magistrate court found that Doe failed to maintain stable housing, employment, and sobriety during the periods when he was released from incarceration. The magistrate court incorporated its findings from the first order and then specifically found that Doe "has been unable to provide a stable place of residence for the minor children during their lifetime," "substantially failed to maintain employment as a result of his drug addictions and incarceration," and "chose to resume his methamphetamine use and was no longer able to have custody of the minor children." Although the magistrate court acknowledged that Doe paid small amounts of child support while working in the prison work center, the court found these payments stopped upon release from prison and Doe was currently more than $20,000 behind in his child support obligation.

The magistrate court acknowledged that Doe loves his children and maintained communication with them while he was incarcerated through weekly phone calls. However, the magistrate court found the calls were generally short in duration and did not promote a normal parent-child relationship. Further, like his child support payments, the magistrate court found that during periods that Doe was released from incarceration, his attempts to contact the children declined. For example, upon his last release, Doe waited over two weeks before reaching out to Mother about seeing the children. Doe does not challenge any of these factual findings.

The magistrate court found Doe has numerous criminal convictions, has a long history of addiction, has a long history of failed treatment for the addiction, has not maintained stable employment or housing, has been incarcerated for seventy-five percent of the time since 2013, and has spent limited time with the children or caring for the children. Substantial and competent evidence supports the magistrate court's findings that Doe neglected the children. *See Doe*, 158 Idaho at 768, 351 P.3d at 1226 (holding parent's history of incarceration, addiction, unstable employment, unstable housing, limited time with child, and admission that he was not ready to care for his child was substantial and competent evidence of neglect).

6

**B.** **Substantial and Competent Evidence Supports the Magistrate Court's Finding That Termination of Doe's Parental Rights Is in the Best Interests of the Children**

Doe argues there was insufficient evidence to support the magistrate court's finding that termination of Doe's parental rights is in the best interests of the children. Although Doe concedes that his continued drug use and incarceration are factors that weigh heavily in a court's determination of best interests of the children, he argues there is no evidence to support the magistrate court's finding that termination would create a beneficial sense of finality for the children because, even upon his release from incarceration, under the current custody order, he cannot have contact with the children without Mother's permission or a court order.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider a range of factors, including: the parent's history with substance abuse, whether the parent has provided financial support, the children's relationship with those currently caring for them and whether the children have improved under that care, the children's need for stability and certainty, the parent's efforts to improve his situation, and the parent's incarceration or continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). When a case involves an incarcerated parent, the trial court may consider the quality and extent of time spent with the children prior to incarceration, the nature of the offense leading to incarceration, charged or uncharged prior criminal behavior while in the home, previous incarcerations, the impact incarceration has had on the children, and the quality of efforts made by the parent to keep a meaningful relationship with the children. *Doe*, 159 Idaho at 198, 358 P.3d at 83. A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Regardless of the current custody order, substantial and competent evidence supports the magistrate court's finding that termination of Doe's parental rights to G.P. and N.P. is in the best interests of the children. The magistrate court found Doe had not been present to be a parent and participate in his children's lives because of his continuous periods of incarceration. Further, the magistrate court found the children have been doing better since Mother ended the children's communication with Doe in October of 2019, are happy and healthy in the custody of Mother and

7

Stepfather, and would benefit from termination as it would bring a sense of finality, normalcy, and permanency without the continued stress and uncertainty of Doe's incarceration and drug addictions. These findings are supported by substantial and competent evidence.

It is undisputed that Doe has not had any contact with the children since Mother stopped answering his calls in October 2019. Mother testified during the evidentiary proceedings that if the children had asked about or expressed a desire to speak with Doe, she would have allowed the phone calls but the children had not mentioned Doe since the calls stopped. Since communication with Doe stopped, Mother has seen improvements in both children. Specifically, Mother testified that the children are "extremely thriving" and more emotionally stable, and she no longer sees the "dips in emotion" which occurred after Doe's weekly phone calls. Additionally, G.P. has made significant improvements in school. In the past, G.P. required special education programming for reading, writing, and spelling but he improved so significantly that his school anticipates he will no longer need such programming in his next school year. Further, G.P. went from requiring assistance 100% of the time with his homework, to being able to complete it unassisted seventy-five percent of the time. G.P.'s teacher's testimony supported this improvement; she testified that towards the end of October 2019, she began to see substantial improvements in G.P.'s school work and emotional stability, which she agreed constituted a "night and day" progression.

The testimony revealed how Doe's periods of incarceration impacted the children. Mother testified that G.P. worried about Doe's condition in prison and that both children would go through periods of acting out when Doe would be released and subsequently re-incarcerated until they adjusted to Doe's incarceration. Stepfather testified that Doe's repeated incarcerations created a lack of trust between the children and Doe. And, Doe himself testified that he was concerned about the long-term effects of his incarcerations upon the children and that Doe knew the children were stable, healthy, and happy with Mother and Stepfather. Further, in August 2020, Doe expressed to Mother that "I am not a fit parent, I can't even take care of myself." Although Mother testified that she tried repeatedly to provide Doe with avenues back into his children's lives, she ultimately believed it was in the best interests of the children to terminate Doe's parental rights because it would create a safety net in a consistent, reliable home; eliminate the children's heartache caused by Doe's cycle of addiction and incarceration; and fulfill the children's expressed wish for Stepfather to adopt them.

Taken together, there was substantial and competent evidence that Doe's substance abuse addiction and repeated periods of incarceration led to his physical absence for the majority of his children's lives and cycles of emotional stress when Doe was released and then re-incarcerated. Over thirteen separate periods of incarceration, Doe had numerous opportunities to change his criminal behavior, but did not do so; Doe is approximately $20,000 in arrears in his child support obligation. Although while incarcerated prior to October 2019, Doe had communication with the children through weekly phone calls, the children often displayed negative emotional behavior before the calls and the children did not ask about Doe after the calls stopped. Once communication with Doe ended, the children showed behavioral and, at least in G.P.'s case, scholastic improvement. Although Doe loves his children, Doe does not provide them with the stability and certainty they need. Accordingly, substantial and competent evidence supports the magistrate court's finding that termination of Doe's parental rights to G.P. and N.P is in the best interests of the children.

Mother and Stepfather request attorney fees on appeal, arguing, "Pursuant to Idaho Appellate Rule 41, Father claim[s] attorney fees in accordance with Idaho Code §12-121." Because Father did not request attorney fees, we interpret this as a request by Mother and Stepfather. However, no argument is provided explaining why awarding attorney fees is appropriate in this case. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Consequently, we decline to award attorney fees in this case.

## IV.

## CONCLUSION

The magistrate court's findings that Doe neglected his children and that termination of his parental rights is in the best interests of his children is supported by substantial and competent evidence. Accordingly, the magistrate court did not err, and the judgment terminating Doe's parental rights to G.P. and N.P. is affirmed. Costs, but not attorney fees, to Mother and Stepfather.

Chief Judge LORELLO and Judge BRAILSFORD **CONCUR**.