IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 44775

| | |
|---|---|
| In the Interest of: JANE DOE, <br> A Child Under Eighteen (18) Years of <br> Age. | ) <br> ) <br> ) <br> ) |
| IDAHO DEPARTMENT OF HEALTH <br> AND WELFARE, | ) 2017 Opinion No. 26 <br> ) <br> ) Filed: June 6, 2017 |
| Petitioner-Respondent, | ) <br> ) Stephen W. Kenyon, Clerk |
| v. | ) <br> ) |
| JANE DOE I (2017-5), | ) <br> ) |
| Respondent-Appellant. | ) <br> ) |

Appeal from the Magistrate Division of the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. A. Lynne Krogh, Magistrate.

Judgment terminating parental rights, affirmed.

Janet K. Whitney, Bonner County Public Defender; Catherine E. Enright, Deputy Public Defender, Sandpoint, for appellant. Catherine E. Enright argued.

Hon. Lawrence G. Wasden, Attorney General; Denise L. Rosen, Deputy Attorney General, Coeur d'Alene, for respondent. Denise L. Rosen argued.

_____

MELANSON, Judge

Jane Doe I (2017-5) appeals from a judgment terminating her parental rights. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Doe has a significant history of drug use, including methamphetamine and prescription pain medications, accompanied by multiple periods of sobriety and relapse. In 2013, Doe was arrested and charged for being in possession of a large quantity of methamphetamine and drug

1

paraphernalia. Doe, who had been released pending trial, became pregnant but did not learn of the pregnancy until January 2014. Doe continued using drugs until she was arrested on a federal warrant in March 2014. Doe pled guilty to one count of possession with intent to distribute methamphetamine in federal court and, in exchange for her guilty plea, Doe's state and other federal charges were dismissed.

In August 2014, Doe gave birth to a child while in custody and awaiting sentencing. A petition under the Child Protective Act was filed, a shelter care hearing was held, and the child was placed in the legal custody of the Idaho Department of Health and Welfare. In September 2014, Doe was sentenced to a term of sixty months and to an additional five years of supervised release. In October 2014, a case plan was developed for the potential reunification of Doe and the child. In early 2015, the child was transitioned to the same foster family that had previously adopted the child's older siblings.[1]

A petition to terminate Doe's parental rights was filed June 30, 2016, and an amended petition was filed in August 2016. Doe remained incarcerated until her release from residential drug treatment to a residential re-entry facility in August 2016.[2] At the termination trial, evidence and testimony was submitted relating to Doe's history, case plan progress, relationship with the child, and the child's special needs. Following the trial, the magistrate made extensive findings of fact and conclusions of law, ultimately ruling that there was clear and convincing evidence that Doe had neglected the child as defined under both I.C. § 16-2002(3)(a) and (b) and that termination was in the child's best interests. Final judgment terminating Doe's parental rights was entered on January 20, 2017. Doe appeals, challenging the magistrate's findings that Doe had neglected the child and that termination was in the child's best interests.

---

[1]     Doe had three other children who were the subject of a child protection case pending in a different state prior to Doe's incarceration. Doe voluntarily relinquished her parental rights to her three other children upon learning that she would be incarcerated.

[2]     During her incarceration, Doe earned reductions in her sentence after completing drug programming and for having no behavioral violations. Doe was expected to transition from the re-entry facility to home confinement in January 2017 and to supervised release on July 28, 2017.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

### A.   Neglect

Idaho Code Section 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(31), as well as situations where the parent has failed to comply with the court's orders or the case plan in a child protection case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.

In this case, the magistrate found that Doe neglected the child under I.C. § 16-2002(3)(a) because, since the child's birth two years prior, Doe had provided none of the care, support, or control necessary for the child's well-being. The magistrate considered Doe's contention that she had done what she had been able to do, including communicating via email and letters, completing any available programming while incarcerated, and achieving the earliest possible release. However, the magistrate ruled:

> The statute does not define neglect by what a parent is able to do, but instead by what is necessary for a child's well-being. [Doe] has provided for none of the child's basic needs, for food, clothing, shelter, or attachment, all of which are necessary for a child's well-being. This lack of care has been the result of the

4

conduct or omission of [Doe], specifically the criminal conduct which resulted in her incarceration and her inability to provide them. As noted . . ., the Idaho Supreme Court has specifically ruled that inability to provide care for a child due to incarceration constitutes neglect.

On appeal, Doe argues that the magistrate's finding that Doe had not provided for any of the child's basic needs was an unsupported assumption and was not supported by substantial and competent evidence. Doe asserts that, throughout the pendency of the case, she had made efforts to do what she could for the child given Doe's limitation of being incarcerated and that she had provided for some of the child's needs.

Even assuming Doe made efforts to provide for the child within the confines of her incarceration, that is not a defense to a finding of neglect. Willfulness is not necessary to support a finding of neglect and its absence is not a defense to neglect. *Idaho Dep't of Health & Welfare v. Doe*, 158 Idaho 764, 768, 351 P.3d 1222, 1226 (2015). Rather, evidence of incarceration is competent evidence of neglect. *Id.*; *see also Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 846, 852, 264 P.3d 953, 959 (2011) (holding that a father's imprisonment alone constitutes neglect under I.C. § 16-1602(25)[3]). A parent who is incarcerated for a substantial portion of his or her child's life cannot provide any amount of parental care and control, subsistence, medical or other care, or control necessary for the child's well-being. *Doe*, 151 Idaho at 852, 264 P.3d at 959. Further, an incarcerated parent is unable to discharge his or her responsibilities to and for his or her children and he or she is leaving his or her children without the parental care necessary for the children's health, safety, or well-being. *Id*. A parent's inability to comply with the law is contrary to providing for the health, morals, and well-being of a child. *Doe*, 158 Idaho at 768, 351 P.3d at 1226. Therefore, the magistrate properly considered Doe's incarceration in finding she neglected the child.

Additionally, the magistrate made extensive specific findings that support the magistrate's ruling that Doe failed to provide proper parental care and support. As noted, Doe has an extensive history of criminal offenses, drug use, and addiction. Doe continued to use drugs even after she became aware of the pregnancy. From the time of the child's birth, two years before, the child had been in the custody of the Department and at no time had Doe

---

[3]     This statute has been renumbered as I.C. § 16-1602(31).

provided parental control or care for the child and had not been involved in the child's medical treatments beyond receiving update reports. As the magistrate acknowledged, Doe's progress during her incarceration was promising--having completed drug programing, maintaining sobriety, and finding employment. However, Doe, at the time of trial, was still in custody and did not have the ability to house the child given Doe's restrictions at the re-entry facility and had only spent three to five visitation sessions with the child. Although Doe now asserts that she provided a winter hat to the child at the termination trial and other financial support directly to the foster parent on occasion, Doe has not cited any testimony or exhibit within the record that supports Doe's statements. Rather, the only evidence of Doe providing for the child was testimony showing that Doe provided a few puzzles and snacks at visitations with the child. Upon review, the magistrate properly considered all of these factors in its determination that Doe did not provide for the child. *See Doe*, 158 Idaho at 768, 351 P.3d at 1226 (holding that there was substantial and competent evidence to support a finding of neglect based on various factors, in addition to a father's incarceration).

Doe has failed to show that the magistrate erred in finding that Doe had not provided for the child for purposes of I.C. § 16-1602(31). Accordingly, there is substantial and competent evidence to support the magistrate's finding that Doe had neglected the child.[4]

**B.    Best Interests of the Child**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198,

---

[4]    Doe also argues that the magistrate erred in finding that Doe neglected the child under I.C. § 16-2002(3)(b). Because we have concluded that Doe has failed to show that the magistrate erred in finding that Doe neglected the child pursuant to I.C. § 16-2002(3)(a), we need not address Doe's arguments regarding I.C. § 16-2002(3)(b).

358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014); *see also Doe v. Roe*, 133 Idaho 805, 809-10, 992 P.2d 1205, 1209-10 (1999); *Doe v. State, Dep't of Health & Welfare*, 122 Idaho 644, 648, 837 P.2d 319, 323 (Ct. App. 1992). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

In this case, the magistrate determined that termination of Doe's parental rights was in the best interests of the child. Specifically, the magistrate found that the child had no parental bond with Doe but was strongly bonded with her siblings and foster parents to the point that transitioning the child would be disruptive. The magistrate also found that the child had special needs requiring a highly structured environment and diligent constant parenting. The magistrate considered Doe's progress toward maintaining sobriety and completing her case plan in the two years since the child had been born. However, the magistrate found that considerable time was still necessary for Doe to establish a parental relationship with the child and achieve successful reunification. The magistrate further found that, although there was a basis to believe that Doe may be able to maintain sobriety, legal income, stable housing and provide for the basic needs of the child, there was no basis to believe Doe could provide the highly structured environment necessary to address the child's special needs. The magistrate concluded that "no matter how much we hope and believe in [Doe's] potential to succeed, it is not in [the child's] best interest to delay permanency, to disrupt what we know she has, and to wager her future success based on hopes and beliefs about [Doe's] future success."

On appeal, Doe argues the magistrate's findings failed to consider all the testimony and factors before determining what was in the best interests of the child. Specifically, Doe alleges the magistrate's findings were based entirely on the testimony of biased witnesses who lacked complete knowledge of Doe's progress. In support, Doe emphasizes contrary expert witness testimony showing that it would be in the child's best interests to be with her biological mother where she could have one-on-one attention, know her family history, and have a relationship with her extended biological family.

As noted, Doe has an extensive history of drug use going back to age eleven, criminal activity, and multiple periods of relapse. It is uncontested that Doe made efforts to communicate with the child, including through letters, photos, and also by attempting to organize video

7

meetings. In addition, Doe has shown personal progress by finding employment, maintaining her sobriety, and participating in approximately three to five visits with the child since Doe's release to a re-entry facility. However, Doe has at no time parented the child. Rather, the child has remained in the legal custody of the Department and under the care of the foster parents, growing up with her siblings. Doe acknowledged at trial that the child had developed a strong bond with her siblings and the foster mother. Additionally, it is undisputed that the child was doing well, her needs were being met by the foster family, and the child had come to rely on and learn from her siblings. Doe testified that she did not have a mother/daughter relationship with the child and that additional time and visitations would be necessary to form such a bond.

Perhaps most notably, the child's mental health specialist testified that the child is drug-affected and has special needs. The specialist testified that some of the child's mental health issues will not change and will require predictability and a highly structured environment in order for the child to function well. Additionally, the testimony shows the child necessitates constant contact to form healthy attachments. The child also requires ongoing specialized instruction to develop communication skills, self-regulation, and sensory processing. The specialist testified that the foster mother and the siblings have provided the structure, stability, and support to help the child develop and learn how to function. The specialist went on to opine that, if the child were to be placed in a different environment, it would be traumatic for her and may result in her having increased struggles and possibly regressing in her development. It was the specialist's conclusion that, based on the child's ability to adjust, the specialist would recommend that the child not be transitioned out of the strong relationships the child now had.

Doe has not been involved in the child's treatment beyond receiving reports and has not had to deal with the child when she is upset and acting out. The magistrate acknowledged Doe's positive progress and strides to be in a position that she could provide for the child's care in the future, including the child's special needs. However, Doe's employment and treatment requirements, while allegedly flexible, had not been fully determined and could vary. Doe testified that she would likely need to use daycare in order to work but had not yet determined what options were available to her to meet her potential work-hour requirements.

We recognize that an absence of an incarcerated parent may be more significant to a very young child than to an older one. Doe remains incarcerated until her expected release date of

July 2017, at which time the child will be nearly three years old. Even if Doe moved to home supervision prior to her anticipated release day, she will not be eligible to care for the child until she can demonstrate that she is able to provide a safe, structured, and stable home environment sufficient to address the child's needs. Given Doe's drug abuse history, criminal record, previous child protection cases, probation compliance, lack of bonding with the child and the child's special needs, it is likely that considerable additional time will pass before Doe is able to regain custody of the child and sufficiently care for her. Consequently, Doe has failed to show that the magistrate erred in finding that it was not in the child's best interests to delay permanency and to disrupt the child's current environment and development based on a hope for Doe's potential future success.

Doe counters that whatever lack of bonding that may exist between Doe and the child is, in large part, due to the lack of reasonable efforts by the Department in providing visitation. Specifically, Doe contends that the Department blocked Doe's attempts to arrange video meetings with the child, which would have allowed Doe and the child to better bond. However, while a finding of reasonable reunification efforts was required throughout Doe's child protection action, it is not required to terminate Doe's parental rights. *See Idaho Dep't of Health & Welfare v. Do*e, 160 Idaho 824, 834, 379 P.3d 1094, 1104 (2016). Moreover, the magistrate found that the Department had made reasonable efforts at each stage of the proceedings except for one status hearing held during Doe's imprisonment. In that instance, the Department had discontinued use of email to communicate with Doe. However, subsequent status review findings show that the Department was making reasonable efforts to reunify. Additionally, the Department arranged for Doe and the child to have in-person visitation every other week when Doe was released to the re-entry facility. The Department provided plane tickets for the foster mother and the child to come to Doe for visitation. The record demonstrates that potential video meetings were being reviewed but, for a number of logistical reasons, had not yet occurred at the time of trial. However, even if the Department did not facilitate the video meetings as requested, Doe has not provided the Court with any legal authority supporting her argument that the Department's failure to arrange video meetings demonstrates the Department failed to make reasonable efforts and we do not consider it further. *See Powell v. Sellers*, 130 Idaho 122, 128,

937 P.2d 434, 440 (Ct. App. 1997) (holding that a party waives an issue on appeal if either argument or authority is lacking).

In sum, Doe's arguments on appeal seek to have this Court reweigh the evidence and testimony and reach a different conclusion. However, this Court will not second-guess the magistrate by reweighing allegedly conflicting witness testimony on appeal. *In re Doe*, 157 Idaho 955, 958, 342 P.3d 667, 670 (2015) (holding that it is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence). Therefore, for the foregoing reasons, we hold there was substantial and competent evidence to support the magistrate's finding that termination of Doe's parental rights was in the best interests of the child. Consequently, Doe has failed to show that the magistrate erred in terminating Doe's parental rights.

## IV.

## CONCLUSION

There was substantial and competent evidence that Doe neglected the child and that termination of Doe's parental rights was in the best interests of the child. Accordingly, the magistrate's judgment terminating Doe's parental rights is affirmed.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR**.