IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 51840

| | |
|---|---|
| In the Matter of Jane Doe I and Jane Doe II, Children Under Eighteen (18) Years of Age. | ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, | ) ) |
| Petitioner-Respondent, | ) ) ) |
| v. | ) ) ) |
| JANE DOE (2024-20), | ) ) |
| Respondent-Appellant. | ) ) ) |

)  Filed: August 22, 2024

)  Melanie Gagnepain, Clerk

)  THIS IS AN UNPUBLISHED
)  OPINION AND SHALL NOT
)  BE CITED AS AUTHORITY

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Andrew Ellis, Magistrate.

Judgment terminating parental rights, affirmed.

Paul R. Taber, III, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Jessica L. Partridge, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Jane Doe (2024-20) appeals from the judgment terminating her parental rights. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of the minor children involved in this action who were born in 2017 and 2018, respectively. In December 2022, Doe, the children, and the children's father gathered at the home of the paternal grandmother to celebrate Christmas. Doe left the residence that afternoon and did not return. The following day, the father was unable to locate Doe to resume care of the children. At that time, the father was unable to care for the children because he was living in a

1

halfway house that did not allow visitors or children. Consequently, the father called law enforcement and reported the situation. Based on an investigation, which revealed concerns about Doe's active substance abuse, evidence of neglect of the children by both parents and Doe's violation of an active no-contact order relative to father, law enforcement removed the children into foster care. Following their removal, the children underwent hair follicle testing to determine whether they had been exposed to illicit drug use. Both children tested positive for high levels of methamphetamine.

Thereafter, the magistrate court approved case plans for both parents and awarded temporary legal custody of the children to the Idaho Department of Health and Welfare. Ultimately, the magistrate court suspended the Department's obligation to make further reasonable efforts toward reunification with either parent. The Department filed a petition to terminate Doe's parental rights. Following the termination trial, the magistrate court found, by clear and convincing evidence, that Doe neglected the children and that termination is in the children's best interests. Accordingly, the magistrate court terminated Doe's parental rights.[1] Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The substantial evidence test requires the trial court's findings to be supported by clear and convincing evidence. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

---

[1]     The magistrate court also terminated the father's parental rights. The decision terminating the father's parental rights is not at issue in this appeal.

2

## ANALYSIS

Doe challenges the sufficiency of the evidence supporting the magistrate court's finding that termination of her parental rights is in the children's best interests. The Department responds that substantial and competent evidence supports the magistrate court's termination decision. We hold that substantial and competent evidence supports the magistrate court's decision to terminate Doe's parental rights.

### A. Statutory Basis for Termination

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

In this case, the magistrate court terminated Doe's parental rights because she neglected the children. Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where

the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found, by clear and convincing evidence, that Doe neglected the children by failing to comply with her court-ordered case plan tasks. One of the tasks of Doe's case plan ordered her to follow all the substance abuse treatment recommendations made in her comprehensive diagnostic assessment. The magistrate court found that Doe did not engage in any substance abuse treatment, did not maintain total abstinence from all nonprescribed mood-altering substances, and failed to comply with random urinalysis testing. Further, Doe failed to participate in the twelve-step meetings required by her case plan, failed to obtain a sponsor, and did not provide the Department proof of addressing her medical issues. It was not until two weeks prior to trial on the Department's petition to terminate Doe's parental rights that she began participating in treatment after she qualified for the Partial Hospitalization Program (PHP) at Moonlight Mountain Recovery. Once she was enrolled in the program, Doe complied with random urinalysis testing and resided in a sober living home affiliated with her program.

Another task of Doe's case plan required her to engage in consistent visitation and contact with her children. Over the sixteen months prior to trial, Doe missed approximately fifty percent of her scheduled visits. Between the months of August 2023 and November 2023, Doe failed to attend any visits. Doe failed to provide an explanation for why she missed so many visits "other than for a time she had an outstanding arrest warrant and was convinced that she would be arrested if she presented at [the Department's] offices for the visits." Additionally, the children's foster parents testified at trial that the children had approximately fifty medical appointments while in foster care. Of those fifty appointments, Doe attended two. Accordingly, the magistrate court found that Doe failed to consistently engage in visitation with her children.

Doe was also ordered to demonstrate a minimum of thirty days of sobriety as part of her case plan. Upon demonstrating said period of sobriety, Doe was ordered to engage in and complete protective parenting education as well as a safety plan and relapse prevention plan addressing the concerns that led to her children entering foster care. The magistrate court found that Doe "never

4

demonstrated thirty days of sobriety" and, as such, "was unable to engage in and complete" a protective parenting course. The magistrate court also found that Doe did not obtain or maintain stable housing and failed to achieve reunification by the last day of the fifteenth month in which the children were in the Department's custody. The magistrate court noted that, at the time of trial, Doe was "living in a sober living facility associated with Moonlight Mountain Recovery" which she was required to leave upon completion of the thirty-day program. Doe testified she planned to move into housing at the Women and Children's Alliance after she fulfilled "a jail sentence of 100 days at the Community Transition Center in Ada County."

Additionally, the magistrate court found that Doe neglected the children as defined in I.C. § 16-1602(31)(a). More specifically, the magistrate court found that Doe failed to prioritize the children's needs over her own. The children entered foster care with "developmental delays in education," and both children were "assessed to be approximately two years behind in their reading and writing skills." When the children were placed into foster care, one of them was described as "sickly, malnourished and needed additional care and attention." Prior to their removal, one child had not seen a doctor in over a year while the other had not seen a doctor in three years. The magistrate court further found that one of Doe's children had "considerable special medical needs that [Doe] was neglecting prior to the children's removal into care including growth hormone deficit, hypotonia, and global developmental delays." Moreover, even though the child was five years old at the time of trial, the magistrate court found she had "the bone structure of a two year old." The magistrate court found that Doe failed to ensure said child "participated in a specialized genetic testing to ascertain the best course of treatment for her conditions."

On appeal, Doe has not challenged these findings and, thus, we will not presume they are erroneous. *See Idaho Dep't of Health & Welfare v. Doe*, 164 Idaho 883, 892, 436 P.3d 1232, 1241 (2019). These findings provide substantial and competent evidence for the magistrate court's conclusion that Doe neglected the children.

## B. Best Interest of the Children

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the

parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

In this case, the magistrate court found that termination of Doe's parental rights is in the children's best interests. According to the magistrate court, the tragedy of this case is that everyone involved agrees that, when Doe visits the children, her "interactions are exceptional." There was no dispute at trial that Doe loves her children and that those feelings are reciprocated. Further, the children "have consistently maintained hope and a strong desire to reunite with their parents." The magistrate court noted that its decision "to terminate parental rights will have a devastating emotional impact on both [children], which will likely take many years of professional counseling help to address." Nevertheless, the magistrate court found that "it is necessary and in the children's best interests to terminate" Doe's parental rights.

The children are "special needs children with broad developmental delays." The magistrate court found that, prior to the children's removal from Doe's care, "these special medical needs were grossly neglected--[one child] had not seen a doctor in a year and [the other] had received no medical attention in three years." The children entered foster care in a sickly, malnourished condition and were years behind in their educational development, which the magistrate court found reflected the depth of Doe's "addiction to methamphetamine and the resulting inability to meet" her parental responsibilities for her children. The magistrate court further found that nothing had changed over the sixteen months leading up to the trial while the children were in foster care. While Doe denied to both the magistrate court and the Department that she was actively using controlled substances, she qualified for the highest level of inpatient substance abuse treatment just two weeks prior to trial. Because Doe's addiction remained as untreated and present as it was at the time of the children's removal into foster care, the magistrate court determined that returning

6

the children to Doe's care would have the same catastrophic results which prompted the children's removal in the first place.

The magistrate court summarized Doe's argument as a general plea to give her credit for the progress she made in the two weeks prior to trial and to give her another chance. However, the magistrate court found that Doe had "long exhausted her 'second chances' in the Child Protection case" and determined it could not "ignore her sixteen month history of dishonesty about her circumstances, her many excuses for non-performance, and her overall refusal to do the hard work necessary to reunite with her children." The magistrate court was not persuaded by Doe's "'death bed conversion' of embracing" her case plan a mere two weeks prior to the termination trial. As such, the magistrate court remained convinced that Doe was not sincere in pursuing meaningful change. Further, the magistrate court found that Doe had not demonstrated a fundamental understanding of what her children will need to recover from their deficits and achieve their highest physical, emotional, and educational potential. At a minimum, the magistrate court determined the children "need adult caregivers who are not in and out of jail, who can provide a stable, sober home." The magistrate court found that Doe failed to show she could provide those basic necessities for the children and determined that, "without those necessities, [the children's] fundamental physical and emotional wellbeing are in jeopardy." For these reasons, the magistrate court determined that, "despite the emotional trauma that will inevitably follow from severing this legal relationship," it was necessary to terminate Doe's parental rights and "free the children for adoption by a forever family that can meet the children's needs."

On appeal, Doe challenges the magistrate court's basis for finding that termination of her parental rights is in the children's best interests. Specifically, Doe argues the magistrate court's finding that termination of her parental rights is in the best interests of the children is not supported by clear and convincing evidence because the magistrate court "downplayed her recent engagement with substance abuse treatment, as well as evidence that she had previously maintained her sobriety for a period of approximately twenty years." Doe attempts to bolster her argument by noting her enrollment in Moonlight Mountain Recovery's PHP. However, the magistrate court was aware of Doe's participation in the program and noted that, "from its experience working with parents battling addiction, a person does not qualify for PHP unless they are actively using controlled substances." As a result, the magistrate court determined that Doe's

7

testimony in which she reported being sober since early 2023 was not credible. Additionally, a review of the record shows the magistrate court considered Doe's reported period of sobriety (twenty years) and nevertheless found that it was in the children's best interests to terminate her parental rights. Doe's argument on appeal, therefore, seeks to have this Court reweigh the evidence presented at trial. This Court will not reweigh the evidence. *Idaho Dep't of Health & Welfare v. Doe (2017-5)*, 162 Idaho 400, 407, 397 P.3d 1159, 1166 (Ct. App. 2017). Our review is limited to whether substantial and competent evidence supports the magistrate court's decision. *See, e.g., Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65 (noting review is whether substantial and competent evidence supports decision). Such evidence exists in this case.

Doe further asserts the magistrate court erred in finding that termination of her parental rights is in the children's best interests because it "minimized the emotional harm the children will suffer as a result of its decision." In support of her argument, Doe cites portions of the transcript where witnesses acknowledged the strong bond Doe had with the children as well as reports from the Department which stated Doe was "really lovely" with the children during her visits. However, as discussed above, a review of the record shows that the magistrate court considered the aforementioned evidence and nevertheless found that termination of Doe's parental rights is in the best interests of the children. As such, Doe's argument on appeal once again seeks to have this Court reweigh the evidence presented at trial; a task this Court will not do. *See Doe (2017-5)*, 162 Idaho at 407, 397 P.3d at 1166. The magistrate court's findings are supported by substantial and competent evidence and support its conclusion, by clear and convincing evidence, that it is in the best interests of the children for Doe's parental rights to be terminated. Doe has failed to show that the magistrate court erred in finding that terminating her parental rights is in the children's best interests.

## IV.

## CONCLUSION

Substantial, competent evidence supports the magistrate court's determination that Doe neglected the children and that termination of her parental rights is in the best interests of the children. Doe has failed to show error in the magistrate court's decision to terminate her parental rights. Accordingly, the judgment terminating Doe's parental rights is affirmed.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.