# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 53013

| | |
|---|---|
| In the Interest of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) |
| ------------------------------------------------------ | ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) |
| Petitioner-Respondent, | ) ) ) |
| v. | ) ) |
| JOHN DOE (2025-20), | ) ) |
| Respondent-Appellant. | ) |

Filed: October 14, 2025

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Victoria Olds, Magistrate.

Judgment terminating parental rights, affirmed.

MRA Legal, PLLC; Jacob E. Reisenauer, Lewiston, for appellant. Jacob E. Reisenauer argued.

Hon. Raúl R. Labrador, Attorney General; Briana Allen, Deputy Attorney General, Lewiston, for respondent. Briana Allen argued.

_____

GRATTON, Chief Judge

John Doe (2025-20) appeals from the judgment terminating his parental rights to his child, X.F. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the father of the minor child, X.F.[1] The Child Protection Act (CPA) case originated from the expansion of a juvenile justice case involving X.F. Following the State's investigation, a child protection petition was filed and the magistrate court ordered removal of X.F. from the home. The removal of X.F. was due to unsafe and unsanitary home conditions, school truancy,

_____

[1] Doe has a second child, who was originally part of this case, but that child was dismissed from the case.

1

and inability of the parents to properly parent. X.F. suffered from severe mental health conditions that the parents had not addressed. X.F. was largely non-verbal, spending most of her time in her bedroom, and Doe had absented himself from her life. X.F. was placed in the custody of the Idaho Department of Health and Welfare (Department) after a contested adjudicatory hearing. The magistrate court held regular and frequent review hearings over the course of the case. After initially attempting reunification, the magistrate court changed the permanency goal to termination of parental rights. Doe contested the termination of his parental rights, and a trial was held in May 2025. Thereafter, the magistrate court entered its findings of fact, conclusions of law, and judgment terminating Doe's parental rights to X.F. Doe appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and

2

convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

Doe claims the magistrate court's determination that Doe neglected X.F. and that termination of Doe's parental rights is in X.F.'s best interests are not supported by substantial and competent evidence in the record.

As an initial matter, Doe fails to include a statement of issues in his appellate brief. The failure of an appellant to include a statement of issues required by Idaho Appellate Rule 35 will eliminate consideration of the issues raised on appeal. *Kugler v. Drown*, 119 Idaho 687, 691, 809 P.2d 1166, 1170 (Ct. App. 1991). In addition, Doe fails to cite to this Court's standard of review. An appellant's brief must articulate the appropriate standard of review because an appellant must address the matters this Court considers when evaluating a claim put forth by an appellant on appeal. *Cummings v. Stephens*, 160 Idaho 847, 853, 380 P.3d 168, 174 (2016). Failure to identify and apply the correct standard of review may result in the waiver of claims on appeal. *Id*. Doe does not include a standard of review in his appellant's brief and has, therefore, waived his claims.

In addition, the Court notes that while Doe challenges the magistrate court's conclusions of neglect and best interests, Doe does not claim that the magistrate court's factual findings are unsupported by substantial and competent evidence. Moreover, Doe's arguments seek to have this Court reweigh the evidence presented at trial. This Court's review, however, is limited to whether substantial and competent evidence supports the magistrate court's decision. *See, e.g.*, *Doe*, 148

3

Idaho at 245-46, 220 P.3d at 1064-65. This Court will not reweigh the evidence. Instead, this Court defers to the magistrate court's unique ability to accurately weigh the evidence and judge the demeanor of the witnesses and take into account the magistrate court's superior view of the entire situation. *Idaho Dep't of Health & Welfare v. Doe (2017-5)*, 162 Idaho 400, 407, 397 P.3d 1159, 1166 (Ct. App. 2017). While most of Doe's arguments are supported by citations to the transcript, he fails to consider the transcript as a whole and relies largely on his own testimony to the exclusion of the other competent evidence relied on by the magistrate court, effectively asking this Court to identify the cited portions as more persuasive than any other portion of the record. Nonetheless, while this Court will not reweigh the evidence, we will review the record for substantial and competent evidence to support the magistrate court's decision.

## A.    Neglect

The magistrate court terminated Doe's parental rights on the basis of neglect. Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a CPA case and the Department has had temporary or legal custody of the child for fifteen[2] of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

### 1.    Lack of proper parental care and control

The magistrate court found that Doe neglected X.F. by failing to provide proper care and control or subsistence, medical, or other care and control necessary for her well-being. I.C. §§ 16-1602(31)(a) and 16-2002(3)(a). The magistrate court may consider whether a parent can provide the child with a permanent, safe, and stable environment; whether a parent can provide adequate food, shelter, and clothing; and, whether the parent's history demonstrates that it is unlikely that he would be able to provide care, and a safe and stable home environment for the child in the

---

[2]    At the time the State filed the petition to terminate parental rights, the statutory timeframe under Idaho Code § 16-2002(3)(b) was fifteen out of the most recent twenty-two months. Subsequently, the statute was amended to twelve out of the most recent twenty-two months.

future. *Idaho Dep't of Health & Welfare v. Doe*, 160 Idaho 824, 833, 379 P.3d 1094, 1103 (2016). The magistrate court may properly consider the history of the family both prior to and at the time of State intervention in determining whether clear and convincing evidence of neglect exists and is not constrained to considering only the conditions as they exist at the time of the hearing. *Matter of Doe Child*, 162 Idaho 69, 76, 394 P.3d 112, 119 (Ct. App. 2017).

At the time the CPA case began, Doe was aware of X.F.'s truancy from school and the unsanitary and unsafe living conditions at Mother's home. Doe described X.F.'s living conditions with Mother as "if you were take . . . a year's worth of garbage, take it back into your house and just spread it all over the place, that's what they lived in." The magistrate court noted that during this time Doe stepped away for several months to show Mother's poor parenting without his support, rather than seeking custody or taking other protective action. Doe testified that he should not be held accountable for the filth and living conditions in Mother's house as he did not allow X.F. to live in filth. However, Doe acknowledged that he allowed the unsafe conditions to exist by doing nothing about it, complaining "But how does that go against me when she's the shitty parent?" Doe failed to take any responsibility and protect X.F. Permitting a child to live in excessively dirty conditions is evidence of neglect. *In re Doe*, 157 Idaho 694, 702, 339 P.3d 755, 763 (2014). Failure to protect a child from another parent's unsafe conduct and allowing a child to live in a known harmful situation is neglect. *In Interest of Doe Child*, 163 Idaho 367, 374, 413 P.3d 767, 774 (2018); *IDHW v. Doe*, 161 Idaho 754, 760, 390 P.3d 1281, 1287 (2017); *Matter of Aragon*, 120 Idaho 606, 610, 818 P.2d 310, 314 (1991).

The magistrate court also found that Doe was unable to protect X.F. from Mother's physical neglect. Such failure to protect constitutes substantial and competent evidence that Doe neglected X.F. *In Interest of Doe Children*, 163 Idaho at 374, 413 P.3d at 774. This failure resulted in X.F. suffering from bouts of depression, resulting in a suicide attempt and multiple hospitalizations.

Additionally, the magistrate court found that Doe does not recognize that his frequent aggressive, demeaning communication style affects his relationship with X.F. Doe contends on appeal that he did not direct derogatory comments toward X.F. However, the magistrate court recounted hearings that X.F. "often attended [and could] hear [Doe's] derogatory comments and cussing." The magistrate court also rejected Doe's claim that at a review hearing he did not say to X.F. "have a nice fucking life," which claim was contrary to the testimony of other witnesses. The

magistrate court stated that Doe's testimony was simply not credible on the issues of emotional volatility, aggression, foul language, and dysregulated behavior.

The magistrate court found that Doe engaged in profane and derogatory behavior toward the Department and others. The volatile dynamic extended to the CPA case, where Doe was aggressive, uncooperative, and vulgar towards Department and court personnel.[3] Doe described the case participants as "all biased, sexist, fucking pieces of shit." Doe felt his communication style was irrelevant to the case because "I don't talk to my kids the way I talk to adults." Doe said: "Adults that I find that irritate me, annoy me, I'll tell them to fuck off to their face. I don't give a fuck . . . because that's what the First Amendment allows me to do." When the magistrate court attempted to redirect Doe's behavior during trial, he suggested the magistrate court "[t]ake it up with the First Amendment." Doe further stated to the magistrate court "You're not a judge. You're just judgmental," and "[d]on't talk to me."

Substantial and competent evidence supports the magistrate court's finding that Doe neglected X.F. by failing to provide care and protection. The magistrate court found that Doe was resistant to any training, education, or efforts to make him a better parent. The magistrate court found that, with Doe, the primary safety concerns related to his lack of positive emotional support and nurturing of X.F.; extreme emotional volatility with others, including his family; derogatory comments directed at X.F. and about Mother in X.F.'s presence; and failure to protect despite knowing of Mother's struggles. The magistrate court properly considered as evidence of neglect Doe's refusal to take accountability for deficient parenting and blaming his problems on others. *See Doe v. Dep't of Health & Welfare*, 122 Idaho 644, 648-49, 837 P.2d 319, 323-24 (Ct. App. 1992); *In Re Doe (2019-31)*, 166 Idaho 357, 362, 458 P.3d 226, 231 (Ct. App. 2020).

Doe's parenting failures directly contributed to X.F.'s mental health deterioration, including depression and truancy, for which Doe denied responsibility. Doe consistently attempted to shift his responsibility to protect X.F. to external sources, including the Department, the magistrate court, and Mother. Doe's failure to change his poor conduct and assume parenting responsibility in this case is substantial and competent evidence of neglect. *Matter of Doe*, 161 Idaho 398, 406, 387 P.3d 66, 74 (2016); *Doe v. State*, 122 Idaho 644, 648-49, 837 P.2d 319, 323-

---

[3] The magistrate court admonished Doe to not use the "F word," anymore during trial. After the third time using this expletive, Doe assured the magistrate court "that's the last one," but it was not. In fact, Doe proceeded to use this word at least nine more times during trial.

34 (Ct. App. 1992). The magistrate court's finding that Doe neglected X.F. by failing to provide proper care and protection is supported by substantial and competent evidence in the record.

### 2. Failure to complete case plan

The magistrate court found that Doe neglected X.F. by virtue of Doe's failure to complete his case plan. The magistrate court reviewed five case plan tasks and found that Doe complied with only one, Task 1, which was focused on Doe's own mental health. In regard to Task 1, Doe attended counseling and signed releases. The remaining tasks, related to Doe's relationship with and parenting of X.F., went unfulfilled.

In the context of the magistrate court's discussion of the individual case plan tasks the magistrate court considered the evidence of neglect addressed above, including the family history; Doe's abusive and profane treatment of Mother; Doe's temper and outbursts directed at and in front of X.F.; Doe's aggressive, uncooperative, and vulgar conduct towards service providers and court personnel; and Doe's blaming others and consequent failure to focus on X.F.'s needs and provide the proper parental care and protection X.F. needed. As noted, Doe's refusal to cooperate with Department staff resulted in Doe's failure to progress in his relationship with X.F., understand X.F.'s needs, positively engage with X.F. and establish a parenting plan going forward.

Task 2 required Doe to engage in protective parenting, family therapy, and positive visits with X.F. The magistrate court termed this task as the most important. Doe's argument that he complied with this task largely centers on letters from a counselor describing, in part, Doe's progress in his relationship with X.F. The letters relied on were not admitted in the termination trial and, therefore, are not properly before this Court. The magistrate court noted that there were times when Doe made progress, but in each instance, Doe regressed after becoming upset and combative, which affected his communication with the Department and his visits with X.F. The magistrate court found that this resulted in Doe's inability "to understand XF's mental health needs and his behavior is harmful to her health and well-being."

In March 2025, the magistrate court ordered that Doe receive unsupervised weekly visits with X.F. This recommendation was contingent on X.F. meeting with a counselor to discuss her concerns and fears regarding the unsupervised visits and her emotional well-being. After X.F.'s meeting with the counselor, the counselor informed Doe that X.F. was uncomfortable having a one-on-one session with Doe. Doe responded by canceling all future sessions with the counselor and did not inform the Department. Consequently, the magistrate court gave the Department

7

discretion to determine when weekly one-hour visits in the community could begin. The Department attempted to contact Doe to setup a visit according to these new terms, but Doe became irritated. In April 2025, Doe announced that he wanted to "sign his rights away" to X.F. and no longer engage in the case plan or visitation with his daughter.[4] This was Doe's last communication with the Department prior to trial.

Doe's inability to communicate with the Department directly led to limitations on visits and ultimately his inability to understand and provide for X.F.'s needs. This was not limited to foul language and aggression, but also included poor follow-up, failure to share information, and overall lack of accountability for parenting. Doe did not believe it was his responsibility to get updates on his child, rather, Doe expected X.F. to share concerns about reunification directly with him. Doe stopped engaging in his case plan and asked to terminate his parental rights. The magistrate court noted that the satisfaction of Task 2 required more than physical safety and included X.F.'s mental health and well-being, which was not met. X.F's hospitalizations were in response to contact and potential reunification with her parents. The magistrate court's finding that Doe failed to satisfy the requirements of Task 2 is supported by substantial and competent evidence in the record.

Task 3 required Doe to provide a safe and stable home for X.F. and allow the Department access to the home to determine suitability. Doe maintained a physically appropriate Idaho residence for most of the CPA case. However, three months prior to trial, Doe moved out-of-state and refused to give the Department his new address, and at trial attempted to "plead the Fifth" to avoid providing it. Doe failed to complete Task 3 because his home at the time of trial could not be assessed by the Department as physically or emotionally safe for X.F.

Task 4 related to Doe's finances, budget, and ability to provide for X.F. The magistrate court noted that Doe was unemployed at the beginning of the case, however, he received rent and resources for caretaking. At the time of trial, Doe relied on social security as his income source. Doe initially provided the Department a budget sheet, but did not update his financial information after he moved out of Idaho and changed his income source. Doe provided a backpack to X.F. and offered to help with other things for X.F. Doe also brought food to visitations. However, there is

---

[4] Doe later challenged the termination of his parental rights.

8

no other argument or evidentiary support showing that Doe regularly provided financial support to X.F. or that he would be able to support her if he was the primary caretaker.

Task 5 related to Doe staying informed of X.F.'s needs and appointments. The magistrate court found that Doe did not engage in X.F.'s medical appointments. The Department tried to keep Doe up to date on X.F.'s educational and health needs by communicating with him in meetings and phone calls, which were frustrated by Doe. Doe claimed he had no obligation to reach out to the Department for information. Otherwise, Doe showed no interest in knowing how X.F. was doing in school and did not request updates on her physical or mental health. Doe lacked any awareness of X.F.'s educational, mental health, and physical health needs, and thus did not complete Task 5.

The magistrate court concluded:

> Father completed one task, and that task related to his own mental health. The remaining tasks related more to his relationship with and parenting of XF went unfulfilled. When he was afforded additional time and opportunities for family therapy, he sabotaged the efforts. When he was told XF wanted to take things slowly and did not yet feel safe with his temper, he blamed others for poisoning her mind against him. However, his behavior in and out of court only reinforced what XF was saying. It only reinforced the case worker reports of threatening and demeaning behavior and comments. It only reinforced the inability to properly parent due to emotional volatility and dysregulation.

Doe's repeated refusals to cooperate with the Department, consistently attend services, or improve his behavior are demonstrated in the record. Doe used offensive and derogatory language towards caseworkers, refused to share necessary information, canceled therapy sessions, and ultimately abandoned efforts at reunification by asking to terminate his parental rights. Even after mental health professionals recommended a gradual path toward reunification, Doe's impatience and hostility derailed efforts. Doe's failure to complete his court-ordered case plan is neglect. Substantial and competent evidence supports the magistrate court's finding that Doe neglected X.F. by failing to complete his case plan.

## B.    Best Interests

Under Idaho law, once a statutory ground for termination of parental rights has been established, the court must next determine whether termination is in the best interests of the child. *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). The "best interests" inquiry is inherently flexible and fact-intensive, with no fixed checklist of factors the court is required to consider. *Matter of Doe*, 164 Idaho 511, 516, 432 P.3d 60, 65 (2018). However, courts often

weigh considerations such as the stability and permanency of the home environment, unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in custody, improvement of the child while in foster care, the parent's efforts to improve his situation, and the parent's continuing legal problems. *In re Doe*, 156 Idaho at 111, 320 P.3d at 1270.

Doe argues that the magistrate court erred in finding that the termination of Doe's parental rights is in the best interests of X.F. The magistrate court found that the stability of Doe's home was never established. Doe's housing situation at the time of trial was unknown. The magistrate court found that Doe did not demonstrate the ability to financially or emotionally support X.F. and that X.F. needs structure and stability. The magistrate court found that the foster parent provided a safe, stable, and loving home environment that employs kindness and patience in addressing X.F.'s needs. X.F. has made progress at school, in the home, in her mental health and happiness, and in her ability to manage her emotions. X.F. has therapeutic, school, and community support in place, which were not in place at the time of removal.

Substantial evidence supports the magistrate court's conclusion that Doe failed to provide a stable and emotionally safe home for X.F. Although Doe maintained a physically appropriate residence for much of the CPA case, his relocation out of Idaho just months before trial--and subsequent refusal to disclose his new address--prevented the Department from assessing the new home's suitability. Moreover, the magistrate court found that Doe's home lacked emotional safety due to his limited engagement in family therapy and failure to support X.F.'s mental health treatment. These factors support the conclusion that termination of Doe's parental rights serve X.F.'s best interests. *See In re Doe*, 156 Idaho at 111, 320 P.3d at 1270 (home stability is a key factor in best interests determination).

The record demonstrates that Doe made only limited financial contributions to X.F. while she was in foster care, including providing food at visits and bringing her a backpack. Doe did not maintain employment and relied solely on social security income, testifying to being lazy and spending much of his time playing video games. These facts, combined with Doe's minimal and inconsistent involvement in parenting, support the magistrate court's finding that Doe's failure to contribute materially and emotionally to his daughter's care supports termination.

X.F. entered care in a state of significant emotional distress: she was truant, nearly nonverbal, and displayed behaviors associated with trauma. Through consistent therapy,

educational support, and a nurturing foster environment, she made substantial progress--becoming communicative, goal-oriented, and hopeful. The magistrate court found that this progress was due to the sustained efforts of X.F., her foster parents, and service providers--not Doe. Termination of Doe's parental rights is thus consistent with ensuring that X.F. continues to thrive in a stable, supportive environment. *In re Doe*, 156 Idaho at 111, 320 P.3d at 1270 (child's improvement in foster care supports best interests finding).

Despite a two-year CPA case, Doe failed to demonstrate meaningful or lasting change. He did not complete most of his case plan tasks, remained disengaged from X.F.'s therapeutic needs, and repeatedly stepped away from services after threatening to terminate his own rights. Doe's own testimony displayed a refusal to accept responsibility. He expressed views that the system was "corrupt" and biased against men and refused to acknowledge his own role in the case.

On appeal, Doe argues that he was the protective and supportive parent prior to the CPA case. He claims that he enforced boundaries with X.F., spent time with her, addressed her truancy issues, and attempted to remediate her filthy living conditions. Doe relies primarily on his own testimony to the exclusion of other evidence, including testimony from Department personnel. Although Doe claims he was an active parent prior to removal, the magistrate court weighed contradictory testimony and reasonably found Doe's behavior--including emotional volatility, prolonged absences, and a decision to disengage due to disagreement with Mother's parenting-- was consistent with neglect and belied his claims.

Doe contends that, during the CPA case, he was not given the opportunity to demonstrate his parenting qualities because the Department actively frustrated visitation. This Court has repeatedly held that the focus of the best interests analysis must remain on the parent's conduct. *See Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 88, 91, 244 P.3d 232, 235 (2010). Moreover, the magistrate court found that Doe's own dysregulation and demeaning communication caused interruption in visitation and development of a proper parent relationship with X.F. The evidence in the record supports the magistrate court's finding that Doe's own negative conduct was responsible for the interruptions in visits leading to Doe's failure to progress in his protective capacity and lack of insight into what X.F. needs. Substantial and competent evidence supports the magistrate court's determination that termination of Doe's parental rights is in X.F.'s best interests.

## IV.
## CONCLUSION

Substantial and competent evidence supports the magistrate court's finding that Doe neglected X.F., and that termination of Doe's parental rights is in the best interests of X.F. Therefore, the magistrate court's judgment terminating Doe's parental rights is affirmed.

Judge LORELLO and Judge TRIBE **CONCUR**.