IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37454

| | |
|---|---|
| IN THE INTEREST OF JANE DOE, JANE DOE I, JOHN DOE, JOHN DOE I, MINOR CHILDREN UNDER EIGHTEEN YEARS OF AGE. | ) ) ) ) ) |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) ) |
| Petitioner-Respondent, | ) ) |
| v. | ) ) |
| JANE DOE II, | ) ) |
| Respondent-Appellant. | ) ) ) |

2010 Opinion No. 41

Filed: June 9, 2010

Stephen W. Kenyon, Clerk

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Carolyn M. Minder, Magistrate.

Order terminating parental rights, affirmed.

Alan E. Trimming, Ada County Public Defender; Adam C. Kimball, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mary Jo Beig, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Jane Doe II (Doe) appeals from the magistrate's order terminating her parental rights as to her four children, N.C., L.M., F.S., and D.S., due to neglect. Doe argues that the magistrate's decision was not supported by substantial and competent evidence. For the reasons set forth below, we affirm.

## I.

## BACKGROUND

Doe is the mother of four children. The children all come from different fathers, and none of the fathers are involved in their children's lives. The oldest, N.C., was born on September 7, 1996, and has not been in contact with her father, who now resides in Mexico,

1

since she was two.[1]  L.M., F.S., and D.S. were born on December 14, 1999, January 21, 2004, and February 22, 2006, respectively, and have never had any contact with their fathers.

On the morning of March 2, 2009, at approximately 8:15 a.m., the Boise Police Department responded to a 911 call regarding Doe's four children who had been left alone overnight.  N.C., who was twelve at the time, called the police to report that her mother had not returned home from the previous night.  When police arrived at the house, they discovered that the children were there with no adult supervision and that there was no phone in the house in case of emergencies.  In order to make a phone call, N.C., who is physically handicapped because of a prosthetic leg, would have to go five houses down and across a street to use the neighbor's phone.  The police tried to contact Doe on her cell phone, but she did not answer.  At about 9:15 a.m., Doe returned home and told the police that she had left the house around 9:00 p.m. the previous night to go out drinking and to stay with her boyfriend.  She also told the police that she had intentionally left her cell phone in the car so that she would not be bothered while she was at her boyfriend's.

When questioned by the detective, Doe could not recall her children's birthdays or their grade levels.   She also could not recall the last time N.C. had seen a doctor for her prosthetic leg to have it adjusted or fitted, or if she had ever taken her other children to any doctor appointments.  Doe later admitted to the police that she was on misdemeanor probation for an injury to child charge.[2]  The children were declared to be in imminent danger, and Doe was arrested and indicted on four counts of felony injury to child due to neglect and lack of supervision of her four children.  Doe eventually pled guilty to one count of felony injury to child and the rest of the counts were dismissed pursuant to plea negotiations.  Doe was sentenced to a unified term of ten years, with four years determinate and six years indeterminate.  As part of the criminal charge, a no-contact order was issued that prohibited Doe from having any contact with her four children until March 3, 2011.  Concurrently with the criminal action, the Idaho Department of Health and Welfare (the Department) filed a petition under the Child

---

[1]    Doe is still legally married to N.C.'s father as no divorce decree can be located.

[2]    Idaho Department of Health and Welfare records indicate that since August 1998, there had been six previous child protection referrals concerning Doe.  Four of these referrals were based on neglect and lack of supervision.  As a result of one of the referrals to the Department, Doe was convicted of misdemeanor injury to child due to F.S. being left unsupervised outside.

Protective Act seeking custody of the children on the basis that they were neglected and without proper parental care and control necessary for their well-being. The magistrate granted the state's petition and placed the children in the custody of the Department.

Consistent with the Child Protective Act, the Department prepared a case plan, with the aim of achieving reunification, which was approved by the magistrate. The case plan required Doe to: complete a substance abuse assessment; participate in random urinalyses testing; allow unannounced random home visits; complete a psychological evaluation and follow all recommendations; participate in personal counseling; participate in a Family Preservation Services program upon reunification; participate in a protective parenting program; demonstrate learned skills during visits and telephone conversations, and provide proof of class completion; not allow any other individuals to reside in her home overnight or longer without the Department's prior approval; address and resolve any pending criminal issues and refrain from any further activity that would result in her arrest or incarceration; and cooperate with developmental and educational testing for any and all of her children as deemed necessary.

The magistrate held case plan review hearings at which point Doe had not fulfilled the requirements of her case plan. The magistrate thereafter approved a permanent plan of termination of parental rights and adoption for L.M., F.S., and D.S., and a concurrent plan of termination and adoption and guardianship for N.C. Consequently, the Department filed a petition seeking to terminate Doe's parental rights.[3] After the trial on the petition for the termination of Doe's parental rights, the magistrate entered an order terminating Doe's parental rights finding that it was in the children's best interest. The magistrate determined that Doe had neglected her four children, that she is unable to discharge parental responsibilities, and that such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals, or well-being of the children. Doe appeals.

## II.

## STANDARD OF REVIEW

In an action to terminate parental rights, due process requires this Court to determine if the magistrate's decision was supported by substantial and competent evidence. *In re Doe*, 143

---

[3]     The Department was given permission to serve summonses for the various fathers via publication. The state also sent notice of intent to take default to the three known fathers (the father of F.S. is unknown).

Idaho 343, 345, 144 P.3d 597, 599 (2006). Substantial and competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 345-46, 144 P.3d at 599-600. This Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Doe v. Doe*, 148 Idaho 243, 246-47, 220 P.3d 1062, 1064-65 (2009). We conduct an independent review of the record that was before the magistrate. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## DISCUSSION

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). *See also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2). Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence. *Id*. Idaho Code Section 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate's decision in this case was based upon I.C. § 16-2005(1)(b), which provides that a parent-child relationship may be terminated when it is in the child's best interest and the parent has abused or neglected the child. A "neglected" child is defined in I.C. § 16-1602(25)(a) and (b) as a child:

> (a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the

4

conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them . . . or

      (b)  Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being . . . .

The magistrate's finding of neglect under this definition is supported by substantial and competent evidence. Evidence from the trial, and statements from Doe herself, show that before the children were taken into custody by the Department, Doe was unable to discharge her parental responsibilities and to give her children the care necessary for their health, safety, and well-being. Doe indicated that she did not understand that it was inappropriate to leave her children home alone all night while she slept at her boyfriend's. Indeed, Doe freely admitted that she regularly left the children home alone and unsupervised with no way to seek help starting in May 2008, in order to accommodate her boyfriend who was not interested in her children. Doe also stated that because no harm had resulted in her leaving her children home alone thus far, it must be acceptable to do so. Doe has had many contacts with the state since her first child was born and there have been numerous attempts to educate Doe about her neglectful behavior. However, all of these attempts failed because Doe's behavior was not impacted by any of the attempts to work with her concerning the children's safety. In fact, Doe has consistently blamed N.C. for the entire child protection case because she is the one who called the police.

Doe argues that the magistrate failed to consider the emotional bond, however slight, that existed between her and her children. The magistrate relied on the psychologist's observations and opinions in determining that there is a lack of an emotional bond between Doe and her children. The psychologist determined and testified that Doe had never formed an emotional bond with her children, as she appeared to have very little emotional attachment to them, and that she could not care for them either physically or emotionally. The psychologist further testified that even at times when she was physically present with her children, Doe ignored them and had minimal interaction with them. The psychologist ultimately determined that Doe has no understanding of her children's emotional needs or their lives and recommended that the children not be returned to Doe at anytime in the future because she does not have the capacity to parent her children in an appropriate, healthy, and safe fashion, and that is unlikely to change. This same testimony was reinforced by the Department caseworker when he testified that he had concerns about Doe's lack of interest in her children as she seldom asked about her children after

5

they were taken into the state's custody. The caseworker further testified that he does not believe that Doe would ever be a safe parent, and that the children should not ever be reintroduced to Doe.

In an effort to show that she is suited to take care of her children, Doe refers to her testimony indicating: that she took a parenting class in 2007 when she was convicted of misdemeanor injury to child; that she eventually did all of the evaluations that she was supposed to; and that she went to one parenting class while in prison. Nevertheless, there is ample evidence to support the magistrate's determination that these intervention efforts have not given Doe the necessary insight as to parental responsibility, and that she is in denial that there are multiple impairments to her capacity to safely parent.

Doe further argues that substantial and competent evidence is lacking to support the order of termination because the psychologist and social worker made no explicit mention that termination would be in the best interests of the children. In no uncertain terms, the testimony from the psychologist and the social worker, as well as the Department caseworker and the guardian ad litem, was that Doe is not capable of discharging her parental responsibilities and that the children should not be returned to her. The psychologist testified that Doe's children should not be returned to her at any time in the future because, as stated above, she does not have the capacity to parent her children in a safe and healthy fashion, and her inability to emotionally bond with others, including her own children, appears to be lifelong and may be permanent. The social worker testified that Doe seems disconnected from her children and is incapable of making reasonable parenting decisions. The social worker elaborated, stating that when it comes to leaving her children home alone, Doe does not understand the negative impact this choice has on her relationship with her children or that this decision results in an increased risk of harm to her children. In addition, the Department caseworker testified that the children are at risk, that it is not safe to return the children to Doe, and that it is in the children's best interest to have Doe's rights terminated. Likewise, the guardian ad litem testified that it is in the children's best interest to terminate Doe's parental rights, and further stated that the children should never be returned to Doe because she has no capacity to parent and that it is highly unlikely she can change her patterns.

After considering the professional opinions and testimony of the psychologist, the social worker, the Department caseworker, and the guardian ad litem, the magistrate stated that they

6

"all agree that [Doe] has no parenting aptitude and that she presents a risk, both physically and emotionally, to her children. They all agree that the children's best interests will be met by terminating [Doe's] parental relationship." *See In re S.W.*, 127 Idaho 513, 518, 903 P.2d 102, 107 (Ct. App. 1995) (holding that Department employee opinions were relevant and admissible as they could "aid the magistrate in determining facts surrounding the care of the children and what would be in their best interests"). When read in context with the rest of the magistrate's thirty-one-page opinion, this statement is accurate. As stated above, each of these professionals does not believe that the children should be returned to Doe. Even though the psychologist and the social worker did not use the phrase "best interest," it does not mean that there was not substantial and competent evidence to terminate Doe's parental rights as the testimony from both indicates that in their opinion, the children should not be returned to Doe.

In further explanation of its decision to terminate Doe's parental rights, the magistrate gave a detailed discussion of the improvements in the children's development since they entered the state's custody. For instance, after the children entered the state's custody, N.C.'s and L.M's head lice problem was resolved, they were given eyeglasses, and N.C. was fitted for a prosthetic arm and an improved prosthetic leg which enabled her to participate in athletic activities. Also, N.C. and L.M. have improved academically. This arrangement has also made it so that N.C. is no longer expected to act as a parent to her younger siblings. Moreover, all four children reside together in the same foster home.

We agree with the magistrate that there had been "demonstrable neglect due to the undisputed physical and emotional chronic neglect of the children since at least May 2008." When looking at the progress the children have made while in the state's custody, taken together with the professional opinions of the social worker, Department caseworker, guardian ad litem, and psychologist, there is adequate evidence to support the conclusion that it was in the children's best interest to terminate Doe's parental rights.

**IV.**

**CONCLUSION**

Doe has shown no error in the magistrate's findings and conclusions. Therefore, the magistrate's order terminating Doe's parental rights is affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge LANSING and Judge GRATTON, CONCUR.

7