**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 53033**

| | | |
|---|---|---|
| In the Matter of: John Doe, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, | ) ) ) | Filed: January 30, 2026 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| JANE DOE (2025-25), | ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Karin Seubert, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Fuhs Law Office, PLLC; Ayla C. Krueger, Lewiston, for appellant.

Hon. Raúl R. Labrador, Attorney General; Briana Allen, Deputy Attorney General, Lewiston, for respondent.

---

TRIBE, Chief Judge

Jane Doe (2025-25) appeals from the judgment terminating her parental rights. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of John Doe (Child). Doe has an extensive child protection action history spanning two states and dating back to 2014.

### A. Child Protection Action History

Pertinent to this case and to the magistrate court's findings is Doe's history of child protection actions initiated against Doe. Doe's first child was removed from Doe's care twice. First, in 2014, when Doe left this child in a vehicle for more than three hours while Doe was inside

1

a casino gambling. The removal resulted in reunification after Doe worked on her case plan and successfully completed it in two years. Second, in 2018, the Department again removed this child when Doe was arrested and placed in jail. Ultimately, Doe's parental rights to her first child were voluntarily terminated.[1]

By 2018, Doe had her second and third child. At the time of Doe's 2018 child protection case, these children were in Washington with their biological father. However, the Washington Department of Health and Human Services removed these children from the father's home for concerns of domestic violence, parental substance abuse, untreated mental health issues, and lack of a stable home environment. Nevertheless, the children were reunified with Doe at a later time.

By 2020, Doe had her fourth child and had custody of three children--her second, third, and fourth. In 2023, the Department removed these children from Doe's care due to concerns of domestic violence against her and because of her inability to recognize the effects of the domestic violence on her mental health and her failure to be protective of her children. Other concerns included untreated mental health issues, substance abuse, and overall lack of stability in the home.

After this removal, the Department discovered allegations of sexual and physical abuse perpetrated by the second, third, and fourth children's biological father. This father is currently serving a prison term for sexual abuse of Doe's first child. It appears Doe was aware of these allegations but did not take any proactive measures. In June 2024, Doe's parental rights to her second, third, and fourth children were terminated. Over the years, there have been a total of sixteen open investigations with Doe's family, where the Department investigated concerns of sexual abuse of the children, lack of supervision, domestic violence, an unstable home environment, physical abuse of the children, substance abuse, and untreated mental health issues.

## B.    Circumstances in the Instant Matter

The Child at issue in this case is Doe's fifth child, born in 2024, around the same time that Doe's parental rights to her second, third, and fourth children were terminated. At Child's birth, Doe admitted to prenatal drug use, and the Department initiated an in-home prevention case. From

---

[1]     There appears to be discrepancies regarding the termination of Doe's rights to her first child. While the magistrate court indicated that Doe voluntarily terminated her rights, the affidavit of the Department's social worker indicates that Doe's rights were terminated involuntarily because she failed to make any substantial progress in her case plan.

June to October 2024, Doe generally complied with the prevention plan, engaging in treatment and permitting both announced and unannounced home visits without concerns noted by the Department staff. However, in November and December 2024, reports emerged of suspected drug use, erratic behavior, and people coming and going from the residence at all hours of the night. The Department attempted multiple home visits and, after successfully contacting Doe, the Department had renewed safety concerns and prepared an amended safety plan. Due to those concerns, the Department removed Child from Doe based upon allegations of neglect and lack of a stable home.

Following a hearing, the magistrate court entered a shelter care order. At the subsequent adjudicatory hearing, the magistrate court found jurisdiction under the Child Protective Act, determined aggravated circumstances were present based on Doe's prior terminations, and placed Child in the Department's custody. After entering foster care, Child received medical care and was placed in a stable home environment. Doe's participation in Child's life was subsequently minimal. Doe attended, at most, six supervised visits out of more than twenty offered. During those visits, Doe displayed erratic behavior and indicators of methamphetamine use. On one occasion, Doe left Child strapped in his car seat for over an hour, and Doe stated she wanted Child to stay awake at night for his foster parents. Doe had not contributed financial support for Child.

Concerns also arose regarding Doe's handling of Child during medical appointments. At one pediatric visit, Doe was observed pressing her chin into Child's soft spot and later dropped him onto the exam table. Doe's behavior was aggressive enough for the pediatrician to end the exam prematurely. Child was later diagnosed with an ear infection.

Doe was discharged unsuccessfully from treatment, refused drug testing as requested, and failed to sign releases for the Department to obtain records from her treatment providers. Doe continued to maintain contact with the biological father of her three children (who was convicted of sexual abuse of her first child). Both the Department caseworker and the court-appointed special advocate testified that Doe could not safely and consistently parent Child, noting Doe's recurring pattern of short-term compliance followed by extended non-compliance with the requirements of her case plan.

The Department filed a petition for termination of parental rights, and the case proceeded to trial. Doe appeared at trial but executed a waiver of notice and right to appear. Subsequently,

3

Doe and her counsel were excused from the trial. The magistrate court entered its findings of fact and conclusions of law and the judgment terminating Doe's parental rights to Child. Doe timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. Idaho Code § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe II*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). Findings are competent, so long as they are supported by substantial, albeit possibly, conflicting, evidence. *Id.* at 246, 220 P.3d at 1065. The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* at 245-46, 220 P.3d at 1064-65. The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that

4

the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe raises four arguments on appeal. First, Doe argues that the magistrate court erred during an adjudicatory hearing by finding that aggravated circumstances existed in her case. Second, Doe argues that the magistrate court lacked substantial and competent evidence to support a finding that Doe neglected Child under I.C. § 16-1602(31). Third, Doe argues that the magistrate court erred by finding that she was unable to discharge parental responsibilities. Fourth, Doe argues that the magistrate court's decision to terminate her parental rights is not in the best interests of Child. For the reasons set forth below, we affirm the judgment terminating Doe's parental rights.

### A. Aggravated Circumstances

Doe argues that the magistrate court erred in concluding it was required to find aggravated circumstances once the Department met its burden of proof. She contends the magistrate court mistakenly determined it had no discretion in deciding whether aggravated circumstances exist in a termination case. Doe's argument is not well-taken.

The record demonstrates that the magistrate court exercised discretion in finding aggravated circumstances. Although the magistrate court initially suggested it was compelled to make such a finding, it invited argument from both Doe and the Department on whether discretion applied. After considering both positions, the magistrate court expressly stated that, "based on the record . . . and in exercise of [its] discretion," aggravated circumstances existed because Doe's parental rights to four of her children had previously been terminated. The record thus reflects that the magistrate court exercised its discretion in making the determination.

Regardless of whether finding aggravated circumstances is discretionary or mandatory, the circumstances in this case support the magistrate court's determination. Idaho Code Section 16-1602(6)(c) provides that aggravated circumstances exist where "the parental rights of the parent to another child have been terminated involuntarily." Here, the record establishes that Doe's parental rights to at least three of her children were terminated involuntarily. Doe's history

falls squarely within the statutory definition of aggravated circumstances. Accordingly, the magistrate court did not err in finding that aggravated circumstances existed in this case.

**B.     Statutory Basis**

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. I.C. § 16-2005. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court found by clear and convincing evidence that the Department had established statutory grounds for termination through neglect and the inability to discharge parental responsibilities. Doe challenges the magistrate court's findings for both grounds.

**1.     Neglect**

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.

Doe argues the magistrate court erred in finding that there was clear and convincing evidence that she neglected Child. Doe asserts that the reasons for termination listed by the magistrate court do not indicate that she left Child without proper parental control. Doe contends that, at the time of Child's removal, there were no concerns of domestic violence in the home. Next, Doe asserts that she successfully bonded with Child until the Department removed Child from the home. Doe also asserts that her history with the Department includes reunifications and a voluntary termination. Finally, Doe contends that, although she has a history of substance abuse, the Department had no safety concerns at the time Child was in Doe's care.

The magistrate court considered the following factors in its assessment of whether Doe neglected Child: (1) Doe's history with the Department; (2) domestic violence; (3) Doe's bond

with Child; and (4) Doe's history of substance abuse. The magistrate court may, in its discretion, consider all of these factors in determining whether Doe neglected Child. A trial court may consider a parent's child protection history as part of a neglect analysis. *Doe*, 144 Idaho at 843, 172 P.3d at 1118. Infliction of perpetual domestic violence, even if not directed at the children, supports a finding of parental neglect as it provides for an unstable and dangerous home environment. *Doe*, 143 Idaho at 347, 144 P.3d at 601. Failure to protect children from an abuser is also evidence of neglect. *Doe v. State, Dep't of Health & Welfare*, 122 Idaho 644, 647, 837 P.2d 319, 322 (Ct. App. 1992). It is appropriate for the trial court to consider the history of a parent's substance use in deciding whether that parent neglected his or her children. *See In re Doe (2014-17)*, 157 Idaho 694, 701, 339 P.3d 755, 762 (2014); *Roe v. Doe*, 142 Idaho 174, 179, 125 P.3d 530, 535 (2005); *Doe v. Roe*, 133 Idaho 805, 808, 992 P.2d 1205, 1208 (1999). Finally, bonding is an appropriate factor for the trial court to consider in determining whether conduct or omissions constitute neglect. *See Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 609, 818 P.2d 310, 313 (1991); *In re Doe*, 149 Idaho 431, 435, 234 P.3d 755, 759 (Ct. App. 2010).

With respect to Doe's child protection action history, the magistrate court noted Doe's decade-long involvement with the Department that included a total of sixteen open investigations into concerns such as a lack of supervision, an unstable home environment, domestic violence, substance abuse, and untreated mental health issues. Doe was substantiated four times for neglect and has been involved in four child protection action cases in Idaho (2014, 2018, 2023, and 2024). The magistrate court also found that prior cases resulted in Doe voluntarily relinquishing her rights to her first child in 2018 and the involuntary termination of her rights to her three other children in 2024. This Court affirmed the 2024 terminations on appeal; these terminations formed the basis of the aggravated circumstances finding in the present case. Regarding Doe's participation in the instant case, the magistrate court also found that Doe initially engaged in services and was cooperative in the case; however, Doe's participation drastically declined as the case progressed. Although Doe was notified of Child's appointments, family meetings and supervised visitations, she attended, at most, six out of twenty of these visits. During these few visits, Doe exhibited signs of substance abuse, acted emotionally and erratically, and (on one occasion) left Child asleep in a vehicle.

Regarding domestic violence as a factor, the magistrate court determined that Doe could not prioritize Child's well-being over Doe's romantic relationship. Doe's prior case, which resulted in the termination of her rights to her three younger children, was initiated because of the domestic violence that took place in front of the children. Doe's romantic partner, the father to her three children, sexually abused her first child. Despite these circumstances, Doe maintained contact with her partner. The majority of Doe's referrals to the Department were initiated because of domestic violence and substance abuse.

As to the lack of sustained bond with Child, the magistrate court found that Doe has detached from Child since he entered care. The magistrate court also found that Doe failed to attend visits on a consistent basis, acted violently toward Child during a medical appointment, and (on at least one occasion) deliberately declined to engage with Child so his sleep schedule would be disrupted and inconvenience Child's foster parents.

With regard to Doe's substance abuse, the magistrate court found that she failed to demonstrate the ability to remain sober, continued to use illegal substances throughout the pendency of her case with the Department, and failed to attend treatment that would have provided her with the necessary tools to remain sober.

The magistrate court based its findings on testimony of caseworkers and other Department professionals, exhibits that contained Doe's prior history with the Department, and other evidence presented at trial. Doe's argument on appeal seeks to have this Court reweigh the evidence presented at trial. This Court's review, however, is limited to whether substantial and competent evidence supports the magistrate court's decision. *See, e.g.*, *Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65 (noting review is whether substantial and competent evidence supports decision). This Court will not reweigh the evidence. *Idaho Dep't of Health & Welfare v. Doe (2017-5)*, 162 Idaho 400, 407, 397 P.3d 1159, 1166 (Ct. App. 2017). The magistrate court's finding of neglect under I.C. § 16-1602(31)(a) is supported by substantial and competent evidence.

### 2. Inability to discharge parental responsibilities

Idaho Code Section 16-1602(31)(b) provides that a child is neglected when the child's parent is unable to discharge the responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his or her health, safety or well-being. Statutory grounds for termination of parental rights are independent, and if any one or more of the

grounds for termination are found, termination may be granted. *Idaho Dep't of Health & Welfare v. Doe (2016-11)*, 160 Idaho 824, 833 n.1, 379 P.3d 1094, 1103 n.1 (2016). Because this Court has affirmed the magistrate court's finding that Doe neglected Child, it is unnecessary to consider the other basis found by the magistrate court.

## C.      Best Interests of Child

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner*, 120 Idaho at 611, 818 P.2d at 315. When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012). The trial court can also consider a parent's ability to change his or her conduct to assume parental responsibilities in determining the best interests of a child. *Doe v. Doe (2019-32)*, 166 Idaho 173, 179, 457 P.3d 154, 160 (2020); *Doe (2016-11)*, 160 Idaho at 833, 379 P.3d at 1103.

Doe argues that termination of her parental rights is not in Child's best interests because Doe had stable housing for seven months, did not have continued legal issues, financially contributed to Child's well-being, and made improvements and attachments in caring for Child. The magistrate court found that terminating Doe's parental rights is in the best interests of Child because Doe is unable to discharge her parental responsibilities to Child. The magistrate court found that Doe did not develop the sustained ability to provide safe and nurturing care. Instead, Doe has prioritized her addiction to illegal substances and the continuation of unhealthy relationships over meeting Child's needs. Moreover, reports from the Department indicate that Child made significant progress in foster care. Upon entry, Child was underdeveloped, withdrawn, and easily startled. Since Child's placement in foster care, Child gained weight, improved in

feeding, and began to engage socially. Child recognized his foster parents as his primary caregivers and thrived in their structured environment. In short, the magistrate court made findings that directly contradict Doe's assertions on appeal. Doe's argument on appeal seeks to have this Court reweigh the evidence presented at trial. This Court's review, however, is limited to whether substantial and competent evidence supports the magistrate court's decision. *See, e.g.*, *Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65 (noting review is whether substantial and competent evidence supports decision). This Court will not reweigh the evidence. *Doe (2017-5)*, 162 Idaho at 407, 397 P.3d at 1166. As a result, we affirm the magistrate court's finding that termination of Doe's parental rights is in the best interests of Child.

## IV.
## CONCLUSION

The magistrate court's findings that Doe neglected Child, aggravated circumstances existed, and termination is in Child's best interests are supported by substantial and competent evidence. Doe has failed to show error in the magistrate court's decision to terminate her parental rights. Accordingly, the judgment terminating Doe's parental rights is affirmed.

Judge GRATTON and Judge LORELLO, **CONCUR**.